20570

METROMONT MATERIALS CORP., Appellant-Respondent, v. Sarah Edith PENNELL, Frances Louise Pennell, Rebecca Pennell Parris, J. Roy Pennell, III, J. Roy Pennell, Jr., Custodian for Sarah Edith Pennell, Frances Louise Pennell, Rebecca Pennell Parris and J. Roy Pennell, III, Marjorie W. Pennell and Anderson Community Foundation, Inc., Respondents-Appellants.

(239 S. E. (2d) 753)

*Butler, Means, Evins & Browne,* of Spartanburg, *for Appellant-Respondent,*

12

*Jones, McIntosh, Threlkeld, Newman & Cox,* of Anderson, *for Respondents-Appellants, as Respondents,*

*Jones, McIntosh, Thelkeld, Newman & Cox,* of Anderson, *for Respondents-Appellants, as Appellants,*

*Butler, Means, Evins & Browne,* of Spartanburg, *for Appellant-Respondent, as Respondent,*

December 15, 1977.

RHODES, Justice:

This is an action under South Carolina's dissenting stock appraisal statute, S. C. Code § 33-11-270 (1976), for the valuation of 126 shares of common stock in Pennell Land Company (Incorporated). Pennell Land Company was merged into Metromont Materials Corporation on May 6, 1975 and it is from this merger that the holders of the 126 shares in question have dissented. The lower court awarded $900 per share as the "fair value" of the dissented shares. Both the surviving corporation, Metromont, and the dissenting shareholders except to this award and both appeal. The dissenting shareholders also question the amount of fees and interest awarded them. Although we substantially affirm the lower court's award of fees and interest, we find it has erred in the amount awarded for the dissented shares. For the reasons that follow, we find the "fair value" of each share to be $745.76.

Although both Metromont and the dissenting shareholders are appellants on this appeal, for ease of reference we will

hereafter refer to Metromont as the appellant and the dissenting shareholders as the respondents. The facts which follow are taken not only from the inadequate record made in the lower court but, in some instances, are also taken from an Order filed August 4, 1977, by the Honorable Robert W. Hemphill, U. S. District Judge for the District of South Carolina.[1]

The three corporations which figure so prominently in this litigation—Spartanburg Concrete Company (predecessor of Metromont), Greenville Concrete Company and Pennell Land Company—were organized in the lifetime of J. Roy Pennell, Sr. As founder of the family concrete business, he was, until his death on December 30, 1971, the major stockholder and controlling voice in the operations of all three corporations. During his lifetime, Pennell caused stock in each of the three corporations to be issued from time to time to his wife and three sons—Richard H. Pennell, Thomas P. Pennell, and J. Roy Pennell, Jr. The latter son is the moving force behind the dissension of stock in the present action.

In order to give a better understanding of the events leading to the present action, it is necessary to go back some 24 years prior to the merger in question.

_____

[1] Judge Hemphill's Order dealt with three related Federal actions which arose out of virtually the same set of facts leading to the present litigation and was made a part of the Record in the present case upon motion of Metromont. Judge Hemphill dismissed the three Federal actions. They are as follows:

(a) Civil Action No. 76-908
J. Roy Pennell, Jr.,
v.
Metromont Materials Corp. and Richard H. Pennell

(b) Civil Action No. 76-910
J. Roy Pennell, Jr., suing derivatively on behalf of Pennell Land Company and behalf of himself and all other sharehoders of Pennell Land Company similarly situated other than the defendants,
v.
Pennell Land Company, Metromont Materials Corp. and Richard H. Pennell.

(c) Civil Action No. 76-725
Sarah Edith Pennell. Frances Louise Pennell, Rebecca Pennell Parris, J. Roy Pennell, III, J. Roy Pennell, Jr. as custodian for Sarah Edith Pennell, Frances Louise Pennell, Rebecca Pennell Parris, J. Roy Pennell, III, and Marjorie W. Pennell,
v.
Metromont Materials Corp. and Richard H. Pennell.

In 1951, the Spartanburg Concrete Company built its plant and set up operations on land which was then owned personally by J. Roy Pennell, Sr. This land comprises the Hayne tract and its value at the time of the 1975 merger is the focal point of this litigation.

In 1956, J. Roy Pennell, Sr., formed the Pennell Land Company as a real estate holding company and ownership of the Hayne tract was transferred to this corporation. A lease was subsequently executed in 1959 between Spartanburg Concrete and the Land Company granting Spartanburg Concrete a leasehold interest in the Hayne tract for a 20 year term running from January 1, 1960 to December 31, 1979. The lease agreement also included an option to renew for an additional 20 years. Under the lease, Spartanburg Concrete was obligated to pay taxes on the property and a rental of $10,000 per year. These same terms applied to the option period. Due to the 1959 lease being misplaced, another lease was executed in 1967 with a term which was to run from January 1, 1967 to December 31, 1986. The 1967 lease contained the same rental and option terms as the 1959 lease and its effect was to extend the stated lease and option period an additional seven years. At some point in time after execution of the 1967 lease the 1959 lease was found.

In 1972, after the death of J. Roy Pennell, Sr., the name of Spartanburg Concrete was changed to Metromont Materials Corporation and a merger was effected with Greenville Concrete. At the time of the 1972 merger J. Roy Pennell, Jr., and his children dissented their stock in Metromont (Spartanburg Concrete) and received value therefor in a State court appraisal action.

At the time the 1959 lease was executed the financial return from it, based on the current value of the land, was unquestionably favorable to the Land Company. However, this advantage changed over time as the value of the land appreciated and, by the time of the Metromont-Greenville Concrete merger in 1972, the 1967 lease was considered ad-

vantageous to Metromont. In the appraisal proceedings arising out of this 1972 merger, J. Roy Pennell, Jr., asserted that the 1967 lease increased the value of the Metromont (Spartanburg Concrete) stock dissented in that merger. The issue having been raised and litigated, it can logically be assumed that the value received for the stock dissented by J. Roy Pennell, Jr., and his children in the 1972 merger included any "increased" value attributable to Metromont's (Spartanburg's) favorable lease.

In 1975, merger between Metromont and the Land Company was voted upon and approved with the merger effective May 6, 1975. J. Roy Pennell, Jr., and members of his immediate family voted against the merger. Immediately after this merger, of the 272 shares held by J. Roy Pennell, Jr., in the Land Company, 12 shares were transferred by him to Anderson Community Foundation and 15 shares each were given to his four children. The 200 shares retained by J. Roy Pennell, Jr., were exchanged for shares in Metromont as provided for in the plan of merger. The 72 shares which he had given to his children and the Anderson Community Foundation, along with 20 shares owned by his divorced wife and 34 additional shares in his name as custodian for his children, were dissented. These 126 shares, out of the 1562 shares of Land Company stock outstanding at the time of the merger, are the shares dissented in this action.

On June 2, 1975, Metromont, being the surviving corporation, offered the dissidents $475.57 per share. The dissenting shareholders being unwilling to accept this amount and the parties being unable to reach agreement, an appraisal action was instituted by Metromont under S. C. Code § 33-11-270(i)(1) (1976). By agreement dated October 23, 1975, the parties concurred in the appointment of Robert L. Waldrop, Jr., as court-appointed appraiser and agreed to be bound by his valuation. The lower court ordered that Waldrop determine the fair market value of the Land Company's property (1) without regard to the lease on the Hayne tract,

and (2) by discounting the value of the Hayne tract for the encumbrance posed by the 1967 lease. The two valuations were to be based on the values of the properties as of May 5, 1975—the day prior to the merger vote.[2] Accordingly Waldrop submitted the following valuations:

Value of all property if Hayne tract subject to
1967 lease and 20 year option exercised ......$1,073,700.[3]

Value of all property if Hayne tract unencumbered by lease .........................$1,459,200.

It is to be noted that under Waldrop's appraisal, there is a difference in value of the Hayne tract of $385,500 depending on whether the 1967 lease, with option exercised, is given effect. In its order, the lower court held that the 1967 lease was merely a restatement of the 1959 lease and that only the 1959 lease should be given effect. Further, in considering the 1959 lease, the lower court only gave effect to the original 20 year term although the court did assert it was logical that the option would be exercised by the lessee in view of the advantageous terms. The lower court then adjusted between the valuations with and without the 1967 lease and, by giving approximately 90% weight to net asset value and 10% weight to market value and earnings value, arrived at a figure of $900 per share. The lower court allowed interest on the award at the rate of five (5%) per cent per annum. The court stated this rate would have been higher had it not been for the delay occasioned by the respondents' attempted removal of the action to Federal Court.[4] On the question of fees and expenses to be awarded the dissenting shareholders under § 33-11-270(i)(7), the lower court awarded $7,500 for attorneys' fees, $5,000 for

---

2 "The fair value of shares shall be determined as of the day prior to the date on which the vote was taken approving the proposed corporate action, excluding any appreciation or depreciation of shares in anticipation of such corporate action." S. C. Code § 33-11-270(a) (1976).

3 The lower court listed the total value with lease as $1,073,200 due to an error in addition. We correct that error here.

4 Removal of the present action was sought on April 27, 1976, at the time the first of the previously mentioned actions was filed in Federal District Court. The case was remanded to State court on August 2, 1976.

expert and appraisal fees,[5] and $1,084.64 for miscellaneous expenses.

As already pointed out, both Metromont and the dissenting shareholders have appealed from the lower court's order. Metromont excepts to the amount awarded per share of stock. It contends that the lower court erred in giving only partial effect to the 1959 lease and in disregarding the 1967 lease. According to appellant's calculations, respondents should have been awarded only $717.27 per share.[6] Metromont does not except to the fees and expenses awarded.

The respondents, likewise, except to the amount awarded for their shares and contend that several adjustments should have been made. They contend that both leases should have been disregarded. Although admitting that they agreed to be bound by the Waldrop appraisal, they assert that there was "patent error" in his valuation of one of the Land Company's other properties (the so-called Cannon Campground property) and that such error should have been noted and adjusted by a court sitting in equity. Respondents also contend that an adjustment should have been made for the "underpayment of rents" in the lease agreements. With these adjustments and giving 100% weight to net asset value, respondents assert that the "fair value" of each dissented share is $1,430.89. In addition, they challenge the lower court's award of fees and interest as inadequate.

We agree with the premise of the parties that this is essentially an equitable proceeding. See *Santee Oil Company, Inc. v. Cox*, 265 S. C. 270, 217 S. E. (2d) 789 (1975). Accordingly, in this equity proceeding tried by the judge alone, this Court is empowered to find facts in accord with its own views of the preponderance of the evi-

---

[5] The lower court's order was somewhat ambiguous in that it is difficult to determine whether the award for expert and appraisal fees is a flat $5,000 or 50% of the fees claimed, not to exceed $5,000. The issue is moot, however, for the total of these fees as claimed by respondents exceeds $10,000 and they would be entitled to $5,000 under either interpretation.

[6] This is based on giving full effect to the 1967 lease and applying the following weights: 90% to net asset value, 5% to market value and 5% to earnings or investment value.

dence. *Townes Associates, Ltd. v City of Greenville,* 266 S. C. 81, 221 S. E. (2d) 773 (1976).

S. C. Code § 33-11-270(a) (1976) provides that a shareholder having a right of dissent "shall, by complying with the procedure in this section, be paid the fair value of his shares if the corporate action to which he dissented is effected." In *Santee Oil, supra,* the Court interpreted "fair value" to mean "intrinsic value", *Id.* 265 S. C. at 273, 217 S. E. (2d) at 791. As that case points out, such value must be computed

"by establishing 'the fair market value of the corporate property as an established and going business.' [citations omitted]. When attempting such an evaluation each case must be decided upon its own facts and circumstances. *'Every relevant fact and circumstance* which enters into the value of the corporate property and which reflects itself in the worth of the corporate stock * * *,' (Emphasis added) [citations omitted] must be considered. [citation omitted] Under the weight of authority the three major factors to be considered are: (1) net asset value; (2) market value; and (3) the earnings or investment value of the dissenting stock."
*Id.* at 273-4, 217 S. E. (2d) at 791 (footnote omitted).

All parties agree that net asset value should be the major factor used in determining the "fair value" of the dissented stock in this case, but they disagree as to what that value is and the weight to be given it. The major point of contention is the effect to be given to the leases covering the Hayne tract.

We do not agree with the position of the lower court that the 1967 lease is merely a restatement of the 1959 lease. While the occasion for the execution of a new lease in 1967 was the misplacement of the 1959 lease, there is nothing within the language of the 1967 lease which manifests any intention that such lease be a mere restatement of or subordinate to the 1959 lease. The undisputable fact

is that the 1967 lease provided for a lease period which extended seven years beyond that of the 1959 lease. We find the lower court erred in disregarding the 1967 lease and holding it inapplicable. It was also error to disregard the option period for we conclude that it would have been exercised by the lessee given its favorable terms.

Respondents assert that, regardless of which lease controls, such lease is invalid due to its being an "interested director transaction" under S. C. Code § 33-13-160 (1976). Alternatively, they allege that the lease is void because never formally approved or authorized. They further contend that equity should disregard the lease so as to prevent unjust enrichment of the majority and pre-merger manipulations by majority shareholders.

Aside from the 72 shares which were given to the dissenting shareholders by J. Roy Pennell, Jr., after the 1975 merger, the record is unclear as to when J. Roy Pennell, Jr.'s wife and children received the shares they held prior to the 1975 merger. However, regardless of whether they owned Land Company stock in 1967 at the time the second lease was executed, or acquired the stock later, they are in no position to collaterally attack the 1967 lease.

It is a "settled principle of equity that a shareholder may not complain of acts of corporate mismanagement if he acquired his shares from those who participated or acquiesced in the allegedly wrongful transactions," *Bangor Punta Operations, Inc. v. Bangor & Aroostook R. Co.,* 417 U. S. 703, 710, 94 S. Ct. 2578, 2583, 41 L. Ed. (2d) 418 (1974) (citations omitted); *accord* cases collected at Annot., 16 A. L. R. (2d) 467, 497, § 8 (1951); and see 19 Am. Jur. (2d) Corporations § 558 (1965) and 18 C. J. S. Corporations § 569 (1939). Stated another way, the transferee stands in no better position than his transferor, 18 C. J. S., *supra.* The transferee must take the corporation as he finds it. 16 A. L. R. (2d), *supra.*

Given the above principles, if respondents acquired their stock after execution of the 1967 lease, they are in no position to attack it. The stock owned by them and dissented in this action came to them by way of gift from either J. Roy Pennell, Sr. or J. Roy Pennell, Jr.[7] Both of these individuals were actively involved with the Land Company and Spartanburg Concrete in 1967 when the lease on the Hayne tract was executed. Both were on the Board of Directors of the two corporations and both were officers of the Land Company. The lease was signed by J. Roy Pennell, Sr., and, although J. Roy Pennell, Jr., did not sign the agreement,[8] he could hardly have been unaware of it due to his involvement with both the lessor and lessee corporations. In 1972, when the younger Pennell dissented his shares in Metromont (Spartanburg Concrete) in the first merger, he contended that the lease, being advantageous to Spartanburg Concrete, enhanced the value of his stock. In his deposition taken in connection with the previously mentioned Federal suits, he initially conceded that his father as Chairman of the Board and chief executive officer of the Land Company had authority to effectuate the lease. Under these circumstances neither of respondents' possible predecessors in title would have been in a position to challenge the lease either because of direct involvement or knowledge and acquiescence. Respondents' predecessors in title being estopped to assert the invalidity of the 1967 lease, respondents, are likewise, estopped from attacking it.

This estoppel applies, of course, with especial force to the stock given respondents by J. Roy Pennell, Jr., *after* the 1975 merger. With respect to the children

---

[7] The record is not clear as to whether the stock owned prior to the 1975 merger came to respondents directly from the senior Pennell or indirectly from him by way of the younger Pennell. It is clear that all the stock in question initially came from J. Roy Pennell, Sr.

[8] The record indicates that when the 1967 lease was executed four members of the seven on the Board of Directors of the Land Company signed the lease in one capacity or another and five of the seven were present. The nonpresent members were J. Roy Pennell, Jr., and his mother Eileen H. Pennell.

of J. Roy Pennell, Jr., there is also an additional ground for estoppel. Like their father, they dissented their Spartanburg Concrete stock in the 1972 merger and, since the issue was raised and an appraisal action had in State court, it can only be assumed that the "fair value" they received included any "increased" value which arose from Spartanburg Concrete's favorable lease. At the very least, by their actions in the prior appraisal proceeding, they recognized the lease as valid. They cannot now assert its invalidity.

Even if the stock owned by respondents prior to the 1975 merger had been held by them in 1967 so that they would not be barred vicariously by the action of their predecessors in title, they are precluded by their own conduct from attacking the 1967 lease. As pointed out, the children of J. Roy Pennell, Jr., are estopped by their actions in accepting the benefits of the lease in the 1972 merger or, at the least, recognizing it as valid at that time. The only other dissenting shareholder in this action who owned stock prior to the 1975 merger—the former wife of J. Roy Pennell, Jr.—does not stand in the same position as her children since she did not own or dissent Spartanburg Concrete stock in the 1972 merger. However, even if she held her Land Company stock in 1967 at the time the allegedly invalid lease was executed, we conclude that she has acquiesced in the state of affairs existing from 1967 to 1975 and is, thus, estopped to collaterally attack the lease now. It is a well recognized principle of equity "that if a party is silent when he should speak, or supine when he should act, he will not afterwards be permitted to either speak when he should be silent, or to act when he failed to do so at the first proper and opportune moment." *King v. Ligon,* 180 S. C. 224, 235, 185 S. E. 305, 309 (1936) (quoting other authority). A stockholder must act promptly after acquiring knowledge of the facts; he cannot sleep on his rights and then expect a court of equity to enforce them. 19 Am. Jur. 2d Corporations § 554 (1965) ; 18 C. J. S. Corporations § 524 (1939).

"The assent on the part of the stockholder which gives rise to an estoppel may be either express or implied from his silence and inaction for an unreasonably long time after acquiring knowledge of the facts." 18 C. J. S., *supra*. Although respondents point out that the wife was not a director or officer of the Land Company and received information only through her husband, they do not contend that she did not have knowledge of the lease. Respondents admit that her source of information was J. Roy Pennell, Jr., a person who was both a Director and officer of the Land Company in 1967 and whose knowledge of the lease cannot be disputed. Her own children benefited from the lease in 1972. In addition, it is clear that J. Roy Pennell, Jr., has been the controlling and dominating force with respect to the stock owned by the members of his immediate family. Under these circumstances, it is inferable that the wife, if she held her stock in 1967 at the time of execution of the lease, has knowingly acquiesced in the state of affairs existing prior to the present merger and is barred from asserting that the lease is invalid.

Respondents also contend the lease should be adjusted for "under-payment of rents". Such an adjustment is precluded for the reasons already discussed.

Respondents further contend that there is "patent error" in Waldrop's appraisal of the Cannon Campground property and that this Court should adjust the valuation. According to respondents, their appraiser, Griffin, and the appellant's appraiser, Willard, appraised the land as if its highest and best use was industrial while Waldrop found the highest and best use to be residential. The three appraisals were, as follows: Willard — $387,300; Waldrop — $475,000; and Griffin — $731,330. The respondents' contention is without merit. They fail to point out why Waldrop's appraisal, which falls between that of the two "interested" appraisers, is in error. Respondent, having failed to show the error they

allege, are bound by Waldrop's appraisal in accordance with their previous agreement.

We now come to our determination of "fair value". We agree with the parties that net asset value should be given the greatest weight. Pennell Land Company was a closely held family corporation which existed primarily as a vehicle to hold real estate and, in fact, real estate represented about 90% of its assets. Its stock was not publicly traded and, as such, there was no established market price. Likewise, not being an operating company, its income was insignificant. We have carefully reviewed the evidence to determine the respective weights and valuations to be given to the factors set out in *Santee Oil, supra.* Respondents contend that net asset value should be given 100% weight while appellant asserts the weight should be 90%. Due to the unusual nature of the company involved, we find 95% to be the proper weight.[9] Any market value to be attributed to the stock would be totally unreliable since there has been no public trading in the stock and no market can accurately be constructed. As such, this factor can be completely disregarded and no weight should be given it. Unlike market value, earnings value is not speculative since earnings are easily ascertainable. We assign this latter value a 5% weight.

According to our calculations, net asset value per share is $785.01.[10] The earnings value per share is zero. Although the Land Company had average earnings of $22,494 for the years 1970 through 1974, this amount largely represents incidental sales of land. While it is true that rental income from the lease was $10,000 per year, this amount was virtually offset by taxes and other costs associated with the land held by the Land Company. The testimony indicates that without the land sales, the Land Company would have

[9] We have not simply split the difference, but were impressed by the testimony of one of the respondents' experts who would have accorded the factor 95% weight.
[10] Total Net Assets of $1,226,186.01 (including the value of Hayne tract as subject to 1967 lease) divided by 152 shares.

shown a loss in most of the years involved. Thus, "earnings" were, as a practical matter, non-existent and a zero value for this factor is proper.[11] To do otherwise would be to give added effect to the value of the land which is a capital asset and already included in the net asset factor.

' On the basis of the above findings, we calculate the "fair value" per share of stock to be as follows:

|  | Value | | Weight | | |
|---|---|---|---|---|---|
| Net Asset | $785.01 | × | 95% | = | $745.76 |
| Earnings | 0 | × | 5% | = | 0 |
| "Fair Value" | | | | | $745.76 |

The last contention advanced by respondents is that the fees and interest rate allowed by the lower court are inadequate. We feel the amounts awarded for attorneys, experts, and miscellaneous expenses under § 33-11-270(i)(6) and (7) were reasonable and we affirm. The history of this litigation indicates that services rendered in this action are practically inseparable from the services rendered in the related Federal actions and respondents have produced no evidence which would justify our increasing the amounts awarded by the trial judge.

On the question of interest, we modify the lower court's award. Respondents should not have been . penalized for the attempted removal of this case to Federal Court whatever their motivation. Metromont is hereby ordered to pay 6% interest on the award for the dissented stock "from the date on which the [merger] vote was taken . . . to the date of payment," S. C. Code § 33-11-270(i)(6) (1976).

Reversed in part: affirmed in part.

LEWIS, C. J., and LITTLEJOHN, NESS and GREGORY, JJ., concur.

---

[11] For a case where earnings value was given a zero value and 25% weight, see *Brown v. Hedahl's—Q B & R, Inc.*, 185 N. W. (2d) 249, 48 A. L. R. (3d) 414 (N. D. 1971).