THIS OPINION HAS NO PRECEDENTIAL VALUE

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Everette H. Newman, Trustee 17, Respondent,
v.
AFC Enterprises, Inc., Appellant.
 
 
 

Appeal From Anderson County
 J. C. Buddy Nicholson, Jr., Circuit Court Judge

Unpublished Opinion No. 2007-UP-135
Submitted February 1, 2007  Filed March 29, 2007   

AFFIRMED

 
 
 
James A. Blair, III, and Reid T. Sherard, of Greenville, for Appellant.
Michael D. Glenn, of Anderson, for Respondent.
 
 
 

PER CURIAM:  Everette H. Newman, Trustee 17, (Landlord) brought suit against AFC Enterprises, Inc. (Tenant), alleging Tenant breached a commercial lease.  After the parties filed cross-motions for summary judgment, the court granted Landlords motion for summary judgment.  We affirm.[1]
FACTS
W. Paschal Cochran owned the premises, the subject of this appeal, which included a building suitable for use as a restaurant.  Cochran entered into a lease (the original lease) with Franchise Enterprises for the use of the premises.  The original lease was scheduled to commence in 1986 with a primary term of fifteen years, ending in 2001.  The original lease granted to Franchise the right to extend the primary term of the Lease for five (5) five-year periods. Paragraph 28 of the original lease contains an option to terminate:

[The tenant] shall have the right, at any time during any extension of the primary term to terminate this lease by paying to [the landlord] in cash the sum equal to twenty-five percent (25%) of the unpaid portion of the rent to be paid for the remainder of such extension period. 

After the premises and lease changed hands, the lessee entered bankruptcy. Subsequently, Alta Cochran, the new landlord, and Pine Tree Foods, the new tenant, entered into an agreement to restate the terms of the lease.    The restated lease adopted the same terms and conditions as the original lease, with certain modifications. The restated lease contained the following provision:

Amendment to Lease: The Lease is hereby amended as follows:
The Landlord, Alta G. Cochran, has agreed to furnish $60,000.00 in cash to do certain repairs at this location. . . . There will be no increase in rent.
In consideration of Landlord paying $60,000 for improvements Lessee agrees to extend the current primary lease for an additional five years with expiration of current primary lease being extended from March 31, 2001 to March 31, 2006.  

The restated lease, therefore, included the options to extend the lease and the right to terminate the lease found in the original lease.  The rent in the lease remained, as set by the original lease, at $62,490.60 per year plus 6% of sales over one million dollars per year. 
Landlord acquired the premises, subject to the restated lease, in 1996.    In 1998, Tenant and Landlord executed an estoppel letter to clarify the terms of the restated lease.  The estoppel letter stated:

The term of the Lease commenced on March 31, 1986, full rent is now accruing thereunder and the term of the Lease expires on March 31, 2006, subject to the exercise of any extension option[s] set forth in the Lease, which options shall remain effective upon the transfer or assignment of Tenants interest in the Lease.  Tenant has four (4) consecutive unexercised options to extend the term of the Lease of five (5) years each on the same terms and conditions of the Lease. 

The estoppel letter concluded:  In the event of a conflict between the terms of the Lease and this letter, the terms of this letter shall control.  Landlord understands that this letter shall serve as a material inducement for you to assume the obligations of Tenant under the Lease. 
On October 25, 2001, Tenant notified Landlord that Tenant was terminating the lease, effective October 31, 2001, pursuant to the terms of Paragraph 28 of the original lease. Tenant tendered a check in the amount of $69,000.04, which it stated represented twenty-five percent of the remainder of the rent for the term of the lease. The letter indicated Tenant sought to terminate the current lease term (April 1, 1986 through the expiration date of March 31, 2006).  
Landlord rejected the proffered termination of the lease by letter dated November 16, 2001.  In the letter, Landlord indicated the termination was not accepted and Tenants check was being deposited as November rent with credit given against the $69,000.04 deposit for each monthly rental due as it accrues.  Landlord concluded:  It is my opinion that this lease is valid through March 31, 2006.  
Landlord brought the underlying action, seeking damages resulting from Tenants alleged breach of the lease. Tenant filed an answer asserting several defenses, including payment, waiver and estoppel, and the Statute of Frauds. The parties filed cross-motions for summary judgment. 
The court granted summary judgment in favor of Landlord, finding Tenant breached the terms of the lease.  The court found the restated lease did not operate as one of the options to extend, but instead created a new primary lease term which continued until March 31, 2006.  The court found Tenant could not terminate the lease pursuant to Paragraph 28 of the original lease because no option to extend the primary lease term had been exercised.  The court also found Tenants defense of waiver and estoppel failed.  Accordingly, the court found in favor of Landlord on the issue of liability and ordered a non-jury trial on the issue of damages.  This appeal followed.
STANDARD OF REVIEW
In reviewing the grant of a summary judgment motion, this court applies the same standard which governs the trial court: summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Rule 56(c), SCRCP; Baughman v. Am. Tel. & Tel. Co., 306 S.C. 101, 115, 410 S.E.2d 537, 545 (1991).  In determining whether any triable issues of fact exist, the evidence and all inferences which can be reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party.  Strother v. Lexington County Rec. Commn, 332 S.C. 54, 61, 504 S.E.2d 117, 121 (1998).  On appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the nonmoving party below.  Osborne v. Adams, 346 S.C. 4, 7, 550 S.E.2d 319, 321 (2001). 
LAW/ANALYSIS
Tenant maintains the trial court erred in finding it breached the lease by terminating it.  Tenant contends there was a genuine issue of material fact regarding the exercise of an extension and whether there was a meeting of the minds between Tenant and Landlord in the restatement of the lease and the execution of the estoppel letter.  Finally, Tenant asserts the court erred in improperly applying waiver and estoppel to the instant action.  We disagree.
I.  Right to Terminate
Tenant argues it had the right to terminate because the restated lease operated as an extension of the original lease and Paragraph 28 of the original lease allows for termination in the manner exercised.  We disagree.
In contract interpretation, courts are required is to ascertain and give legal effect to the intentions of the parties as expressed in the language of the contract.  United Dominion Realty Trust, Inc. v. Wal-Mart Stores, Inc., 307 S.C. 102, 105, 413 S.E.2d 866, 868 (Ct. App. 1992).  If a contracts language is clear and capable of legal construction, this courts function is to interpret its lawful meaning and the intent of the parties as found in the agreement.  Smith-Cooper v. Cooper, 344 S.C. 289, 295, 543 S.E.2d 271, 274 (Ct. App. 2001).  
Where the language used in a contract is clear and unambiguous, the court will be guided by the language of the contract, taken and understood in its plain, ordinary, and popular sense, to determine the contracts force and effect.  See Warner v. Weader, 280 S.C. 81, 83, 311 S.E.2d 78, 79 (1983); Sphere Drake Ins. Co. v. Litchfield, 313 S.C. 471, 473, 438 S.E.2d 275, 277 (Ct. App. 1993).  Courts do not have the authority to make new contracts for parties.  Rather, their duty is limited to interpretation of the contract made by parties, regardless of its wisdom or folly, apparent unreasonableness, or failure to guard their rights carefully.  C.A.N. Enters., Inc. v. S.C. Health & Human Servs. Fin. Commn, 296 S.C. 373, 378, 373 S.E.2d 584, 587 (1988).  
Tenant acknowledges that the original lease was terminated with the bankruptcy of a prior tenant, thus necessitating the restated lease.  The provisions of the restated lease make it clear that the terms of the original lease were being adopted by the parties, with the exception of any modified terms.  The principle provision modified was the term of the lease.  The parties to the restated lease negotiated a new term for the primary lease in consideration of the landlord paying up to $60,000.00 towards improvements on the premises. Based on the clear and unambiguous language of the restated lease, the parties intended the primary lease term to run until March 31, 2006, and not March 31, 2001, as stated in the original lease. 
In addition, the estoppel letter drafted by Tenant and signed by Landlord states the term of the lease commenced on March 31, 1986 and ends March 31, 2006.  If the parties to the estoppel letter intended the restated lease provision to be construed as an extension of the original lease, they could have stated such in the estoppel letter.  However, the plain, unambiguous wording of the estoppel letter indicates the primary term of the lease expires on March 31, 2006.  Finally, the estoppel letter takes the additional step of clarifying:  In the event of a conflict between the terms of the Lease and this letter, the terms of this letter shall control.    
Accordingly, based on the clear and unambiguous terms of the restated lease and the estoppel letter, Tenant was not operating during any extension of the primary term, but was instead still operating during the primary term of the lease.  Therefore, under Paragraph 28, there is no genuine issue of fact whether Tenant had the right to terminate the lease prior to March 31, 2006.  As a result, the court properly determined Tenant breached the lease by failing to fully perform the provisions of the lease through March 31, 2006.
II.  Payment, Waiver, and Estoppel
Tenant contends the trial court erred in failing to find the payment of the termination fee constituted full payment under the terms of the restated lease.  In the alternative, Tenant maintains Landlord either waived his right to claim a breach of the lease or was estopped from claiming a breach of the lease.  We disagree.
First, as discussed above, Tenant had no right to terminate the lease prior to March 31, 2006.  Therefore, Tenants payment of one fourth of the remaining rents was not a proper termination of the lease and could not be considered full payment pursuant to the provisions of the restated lease and estoppel letter.
Next, Tenant asserts Landlord waived his right to claim a breach of the lease by accepting Tenants payment of the termination fee and depositing Tenants check in the amount of $69,000.04.  Waiver is defined as a voluntary and intentional abandonment or relinquishment of a known right.  Janasik v. Fairway Oaks Villas Horiz. Prop. Regime, 307 S.C. 339, 344, 415 S.E.2d 384, 387 (1992).
Generally, the party claiming waiver must show that the party against whom waiver is asserted possessed, at the time, actual or constructive knowledge of his rights or of all the material facts upon which they depended.  Id.  Whether a party is barred by estoppel or waiver can only be determined in light of the circumstances of each case.  See Id.
In the instant case, Tenant sent a letter to Landlord stating the $69,000.04 check was for payment of the termination fee. Landlord responded by letter:

I am this day depositing the $69,000.04 check which you sent me by letter . . . Not as recognition of it as a termination fee but in order to meet my November and future mortgage payments.  I do this because you have not sent the November rent payment and have indicated future monthly rental checks will not be forthcoming.
It is still my opinion that this lease is valid through March 31, 2006.  Until we can clear up this issue, I will give you credit against the $69,000.04 deposit for each monthly rental due as it accrues.  When you start back the monthly rentals, I will forward the remaining balance to you. 

Tenant again wrote Landlord indicating it sought to terminate the lease, it would no longer be operating under the lease, and that the lease was of no further force and effect.  Tenant did not seek a return of the money held by Landlord.  It simply reiterated its belief that the lease was properly terminated.
Under the circumstances of this case, we find no genuine issue of material fact indicating Landlord waived his right to claim Tenant breached the lease.  Landlord clearly indicated the reason he deposited the check was because he believed the lease to still be in effect and required monthly rental payments by Tenant.  All actions taken by Landlord, including the letter and the subsequent credits for monthly rents against the deposit, provide strong evidence that Landlord did not intend to waive his right to claim a breach of the lease by depositing the money.  Accordingly, the trial court properly granted summary judgment to Landlord because the retention of Tenants check did not act as a waiver of Landlords right to pursue additional damages from Tenant for breach of the lease.
Lastly, Tenant maintains Landlord should be estopped from asserting a breach of the lease based on Landlords inaction in clarifying the provisions of the estoppel letter and in failing to immediately return the termination fee sent by Tenant.  Tenant points to Metromont Materials Corp. v. Pennell, which states:  It is a well recognized principle of equity that if a party is silent when he should speak, or supine when he should act, he will not afterwards be permitted to either speak when he should be silent, or to act when he failed to do so at the first proper and opportune moment.  270 S.C. 9, 22, 239 S.E.2d 753, 760 (1977) (citing King v. Ligon, 180 S.C. 224, 235, 185 S.E. 305, 309 (1936)).  In addition, this court has explained in great detail:

Under South Carolina law, the essential elements of estoppel are divided between the estopped party and the party claiming estoppel.  As to the estopped party, the essential elements are:  (1) conduct amounting to a false representation or concealment of material facts, or conduct calculated to convey the impression that the facts are otherwise than, and inconsistent with, the partys subsequent assertions; (2) intention or expectation that such conduct be acted upon by the other party; and (3) actual or constructive knowledge of the real facts.  As to the party claiming estoppel, the essential elements are:  (1) lack of knowledge or the means of acquiring, with reasonable diligence, knowledge of the true facts; (2) reasonable reliance on the other partys conduct; and (3) a prejudicial change in position.  Unlike waiver, the estopped party need not intend to relinquish or change any existing right for estoppel to arise.  The reliance by the party claiming estoppel must be reasonable, and it must proceed in good faith.  
Estoppel by silence arises when the estopped party owes a duty to speak to the other party but refrains from doing so, thereby leading the other party to believe in an erroneous state of facts.  A manifest intent to mislead is not required for estoppel by silence; it arises when the silence is intended or has the effect of misleading the other party, provided the other party acts reasonably.  Estoppel may also arise when the estopped party fails to act at the first proper and opportune moment.  

Provident Life & Accident Ins. Co. v. Driver, 317 S.C. 471, 477-78, 451 S.E.2d 924, 928 (Ct. App. 1994) (internal citations omitted).   
However, in this case, Landlord did speak at all available opportunities.  Landlord signed the estoppel letter drafted by Tenant purporting to explain the provisions of the lease.  Landlord understood, as we have found, that the estoppel letter did not allow termination prior to March 31, 2006, as was clearly stated in the estoppel letter.  In addition, Landlord immediately responded to Tenants attempt to terminate the lease by writing a letter refusing to acknowledge the termination and insisting that the lease continued in effect.  Accordingly, there is no genuine issue of material fact indicating Landlord was estopped from arguing a breach of the lease by his inaction.  Therefore, summary judgment in favor of Landlord was proper.
Further, Landlord made no attempt to mislead Tenant, or to conceal any material facts regarding the lease, its terms, or Landlords expectations.  Additionally, Landlord, in his letter, explained his decision regarding denying the termination of the lease and the negotiation of the $69,000.04 check to offset future damages.  As a result, we hold there is no evidence in the record indicating Landlord should be estopped from recovering for Tenants breach of the lease.
III.  Meeting of the Minds
Tenants final argument is that there was no meeting of the minds in the estoppel letter due to the fact that the original lease provides for five extensions and the estoppel letter provides for only four extensions.  We disagree.
In order for a contract to be valid and enforceable, the parties must have a meeting of the minds as to all essential and material terms of the agreement.  Davis v. Greenwood Sch. Dist. 50, 365 S.C. 629, 634, 620 S.E.2d 65, 67 (2005); Player v. Chandler, 299 S.C. 101, 105, 382 S.E.2d 891, 893 (1989); see also Edens v. Laurel Hill, Inc., 271 S.C. 360, 364, 247 S.E.2d 434, 436 (1978) (It is well settled in South Carolina that in order for there to be a binding contract between parties, there must be a mutual manifestation of assent to the terms.)  The meeting of minds required to make a contract valid is not based on a secret purpose or intention on the part of one of the parties, stored away in his mind and not brought to the attention of the other party, but must be based on a purpose and intention which has been made known or which, from all the circumstances, should be known.  Player, 299 S.C. at 105, 382 S.E.2d at 894.
Even assuming, that the estoppel letter constitutes the contract between the parties, the terms of the estoppel letter are clear and unambiguous.  There is no suggestion that either party hid any intentions from the other party.  Both parties were presented a clear statement of the lease based on the terms of the estoppel letter.   As discussed above, Tenant in drafting the letter and Landlord in signing the letter acknowledged that the current term of the lease, as defined by the restated lease, extended from March 31, 1986 until March 31, 2006.  Both parties are bound by the expression of their intentions as reduced to writing in the estoppel letter.  Finally, the estoppel letter made it clear that it controlled on any provisions in conflict with the restated lease.  Therefore, based on the clear terms of the estoppel letter, we hold there is no issue of fact concerning whether there was a meeting of the minds between Landlord and Tenant on all material terms to the lease.
CONCLUSION
We hold the terms of the restated lease, and the estoppel letter were clear and unambiguous.  We conclude based on the plain and ordinary meaning of the terms of the restated lease, and the estoppel letter, Tenant did not have authority to terminate the lease prior to March 31, 2006.  We further hold Tenant breached the lease by failing perform pursuant to its provisions through the end of the primary term of the lease, March 31, 2006.  We also hold the Landlord did not waive, nor was he estopped from asserting, his right to seek damages for Tenants breach of the lease.  Finally, we hold there was a clear meeting of the minds in drafting and signing the estoppel letter and that both parties were properly bound by the terms of the estoppel letter and the restated lease.  Accordingly, the decision of the trial court is 
AFFIRMED.
BEATTY, WILLIAMS, JJ., and CURETON, A.J., concur.

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.