# SCHLEGEL v. UNITED STATES.

## Civ. No. 1842.

District Court, W. D. New York.

March 15, 1947.

Harris, Beach, Keating, Wilcox & Dale of Rochester, N. Y. (Charles S. Wilcox and Harlan F. Calkins, both of Rochester, N. Y., of counsel), for plaintiff.

George L. Grobe, U. S. Atty., of Buffalo, N. Y. (Maurice P. Wolk, Sp. Asst. to Atty. Gen., and Austin J. Donovan, Asst. U. S. Atty., of Rochester N. Y., of counsel), for the Government.

BURKE, District Judge.

On August 1, 1940 plaintiff made a gift to his daughter of 100 shares of Class B stock of Schlegel Manufacturing Company. On February 10, 1941 he made a gift to his wife of 680 shares of Class B stock of the same company. The latter gift was incorrectly reported in plaintiff's gift tax return as a gift of 400 shares. The tax liability on the excess of 280 shares not reported is not involved in this action. In plaintiff's gift tax returns the stock was valued at $220 per share. The Commissioner assessed deficiencies in each case on the ground that the fair value of the stock was $360 per share. The deficiencies were paid. Claims for refund were filed and rejected. This suit is brought to recover the deficiencies assessed and paid. The question involved is the fair market value of 500 shares of Class B stock on February 10, 1941, the parties having stipulated that the valuation on that date will be determinative for each of the years in question.

Schlegel Manufacturing Company was incorporated in 1910. Its principal business is the manufacture of narrow weave fabrics for the automobile trade. The business was started as a partnership about 1890 under the firm name of Schaefer and Schlegel and was then engaged in making trimmings for furniture, caskets and carriages. It went through a number of changes in the type of its output, but since about 1920 its principal business has been supplying narrow weave items for the automobile trade. In 1940 and 1941 about 98% of its sales were to automobile companies of which General Motors purchased about 50%, Standard Products Company about 35%, and Chrysler, Briggs, Ford and Packard the balance. The plaintiff was one of the original founders of the business and has been actively

496

managing it since its beginning. He is now 81 years old. The company had issued and outstanding on February 10, 1941, 660 shares of Class A stock and 6,600 shares of Class B stock. The two classes of shares have the same preferences, privileges and rights except that Class B stock has no voting rights. The plaintiff is the principal stockholder. On February 10, 1941 he held 378 shares of Class A stock and 3,680 shares of Class B stock. All of the stock was closely held by members of the Schlegel family. The company owns all of the capital stock of the Schlegel Company of Canada, Limited, whose principal place of business is in Toronto. It is engaged in the same business and sells to the same customers. Neither class of stock of Schlegel Manufacturing Company nor the stock of the Schlegel Company of Canada, Limited, is listed on any exchange and no sales have ever been made to the public of the stock of either company.

Upon the trial the plaintiff called two expert witnesses who testified regarding the value of the stock on February 10, 1941, one of whom testified that the value was $171 per share and the other $202.50 per share. The Government called three, the first of whom testified to a value of $449.28 per share; the second $400 per share; the third $428.47 per share.

The large discrepancy between the valuation of the· plaintiff's and defendant's witnesses occurs because of the relative consideration given by the witnesses to investment securities held by Schlegel Manufacturing Company and Schlegel Company of Canada Limited. On the date in question Schlegel Manufacturing Company owned common stocks, preferred stocks, and bonds having a total market value of $1,437,491. The Canadian company held on that date common stocks and bonds having a market value of $244,407. Each share of stock of Schlegel Manufacturing Company represented on that date, in addition to its equity in the manufacturing business, ownership of securities having a value per share in excess of $230. Thus it is seen that the valuation testified to by the plaintiff's witnesses was less than the value per share which it represented in ownership of the investment securities alone of the two companies.

It can hardly be denied that the market value of the readily saleable securities owned by the two companies was "a relevant fact bearing upon the value of the capital stock." Ray Copper Co. v. United States, 268 U.S. 373, 45 S.Ct. 526, 528, 69 L. Ed. 1003. If so, under Treasury Regulation 108, Section 86.19(c), in valuing the stock, since actual sales or bona fide bid and asked prices were not available, the value is to be arrived at upon the basis of that factor as well as the company's net worth, earning power, dividend-paying capacity, and all other revelant factors. Apparently the plaintiff's witnesses did not take that factor into consideration in valuing the stock or, if they did, they discounted it as a factor advancing no sound reason for doing so. One of the plaintiff's experts said that he counted it as nothing. He was asked on cross-examination: "Q. So that the asset of $1,400,000 in investments does not weigh very heavily in determining the value, fair market value, of the Schlegel stock on February 10th, according to your formula. A. In my judgment it weighs nothing. It is just so much more working capital." Later in cross-examination he was asked: "Q. I will ask you to assume that it is a part of the majority holding. Wouldn't you consider liquidating value in determining the fair market value? A. No sir, I would not." There was no suggestion in any of the testimony that the investments were unsound. Just why the stock should be worth less than its participating value per share in the investment securities of the American and Canadian companies, wholly apart from the value of the manufacturing end of the business, is hard to understand. So also is it difficult to comprehend the testimony of the same witness who testified that if the plaintiff had come to him on February 10, 1941 and stated he had been offered $171 per share for a block of 400 or 500, or 600 shares of Schlegel Manufacturing stock and had asked him as an expert as to the advisability of accepting that price, he would have advised him "to jump at it * * *." On that date the plaintiff was the controlling stockholder and could have accomplished complete liquidation of the investment accounts of the two companies and thereby realized.

about $230 per share for but a part of its assets or he could have procured a distribution of the investment securities to the stockholders in kind. It is quite apparent that the witness in valuing the stock, contrary to the command of the Treasury Regulation above referred to, considered only the earnings of the company and disregarded "the company's net worth" and "other revelant factors having a bearing upon the value of the stock. * * *" On direct examination he testified: "Q. Is that, in your opinion, the prime determining factor of fair market value, the earnings? A. In my opinion that is the only thing that determines price level, the only factor." I think it is apparent that the other expert witness called by the plaintiff fell into the same error of basing his valuation on earnings alone, disregarding the company's net worth and other revelant factors having a bearing upon the value of the stock. This method of valuation was wrong as a matter of law. Cf. Commissioner v. McCann, 2 Cir., 146 F.2d 385.

For the five year period prior to the date in question the Canadian company showed annual average net income of $43,-045.96, an average per share of $36.33 but has never declared nor paid dividends on its capital stock. Despite this record of earnings, under the method adopted by the plaintiff's witnesses, the valuation of the stock of Schlegel Manufacturing Company was not increased by reason of its ownership of the stock of the Canadian company because it had paid no dividends. This method of valuation disregards a revelant factor affecting the value of the stock of the parent company.

■ The method of valuation adopted by the plaintiff's witnesses treated the investment activities of the parent company as a part of the manufacturing business, although the surplus invested in securities was neither required nor used in the company's manufacturing business. The balance sheets for the ten preceding fiscal years show that it always maintained a favorable position of liquidity apart from its investments. The evidence demonstrated no need for the large reserve represented by investments, either for anticipated conversion costs or possible changes

in its business. The same is true of the Canadian subsidiary. The indefiniteness of the plan of the Canadian company to construct a new building for its manufacturing operations was not sufficient justification of a reserve for that purpose. In view of all the circumstances the defendant's valuation witnesses were warranted in viewing the investment activities of both the parent company and its Canadian subsidiary as ventures independent of the manufacturing business and in basing their valuations in part on the consolidated balance sheets and income accounts of the parent company and its subsidiary, and in considering the manufacturing operations of both companies separate and apart from the investment activities.

■ The plaintiff cannot succeed in this suit because he has not sustained the burden of showing that the value adopted by the Commissioner was more than the fair market value of the stock in accordance with the standards of valuation fixed by the statute, 26 U.S.C.A.Int.Rev.Code, § 1005, and the Treasury Regulation regarding valuation of stocks, supra.

Judgment for defendant dismissing the complaint. Separate Findings of Fact and Conclusions of Law are filed herewith.

## Findings of Fact

1. On August 1, 1940, plaintiff made a gift to his daughter, Dorothy S. Gray of 100 shares of Class B stock of Schlegel Manufacturing Company.

2. On February 10, 1941, plaintiff made a gift of 680 shares of Class B stock of Schlegel Manufacturing Company to his wife, Louise M. Schlegel.

3. The market value of Class B stock of Schlegel Manufacturing Company on August 1, 1940, and February 10, 1941, was the same.

4. Schlegel Manufacturing Company was incorporated in 1910. It was the outgrowth of a business which commenced as a partnership under the name of Schaefer and Schlegel in 1890. Its business has always been the manufacture of narrow weave fabrics. In the beginning of the partnership its business was the manufacture of trimmings for furniture, caskets and car-

riages. Throughout the years it had a number of changes in the character of its output but since about 1920 its principal business has been supplying narrow weave items for the automobile trade. In 1940 and 1941 about 98% of its sales were to automobile companies. General Motors purchased about 50%, Standard Products Company about 35%, and Chrysler, Briggs, Ford and Packard the balance. The main products were weather stripping for automobile doors and glass run channels for the windows.

5. The total shares of stock of Schlegel Manufacturing Company issued and outstanding on August 1, 1940, and on February 10, 1941, were 660 shares of Class A and 6,600 shares of Class B. The two classes of stock have the same preferences, privileges, and rights except that Class B stock has no voting rights.

6. All of the stock on both of said dates was owned by members of the Schlegel family. No stock of either class has ever been sold to the public and neither class of stock is listed on any exchange nor sold over the counter.

7. The plaintiff was one of the original founders of the business. He has been its president since the incorporation. On both of said dates he owned 378 shares of Class A and 3,680 shares of Class B stock and he has been managing the business since its foundation. At the time of the trial he was 81 years of age.

8. The business of Schlegel Manufacturing Company is a specialty business, is cyclical, speculative, and in a competitive field and is subject to changes in design of automobile manufacture.

9. The company's machinery is not suitable for other types of textile weaving.

10. The accumulated earnings have in part been invested in stocks and bonds of other companies and on February 10, 1941, the market value of such investments was $1,437,491 exclusive of the stock of the Schlegel Company of Canada, Limited.

11. For the ten years ending June 30, 1940, the investment accounts showed a net loss of $6,987.42.

12. The company's present plant was built in 1900. The company has purchased property at the corner of Culver Road and Humboldt Street and intends at some time to build a plant at that location but no definite plans had been formulated up to February 10, 1941.

13. The average annual net income of the company available for payment of dividends for the ten fiscal years ending June 30, 1940, was $140,260.37 per year. The average net annual income available for payment of dividends for the five fiscal years ending June 30, 1940, was $211,017.01.

14. The average per share net annual income available for the ten fiscal years ending June 30, 1940 was $19.32. The average per share net annual income available for dividends for the five fiscal years ending June 30, 1940, was $29.06.

15. The average dividend paid during the ten fiscal years ending June 30, 1940, was $8.90 per share. The average dividend paid during the five fiscal years ending June 30, 1940, was $12.10.

16. In 1928 the Schlegel Company of Canada, Limited, was organized with its principal office and place of business at Toronto, Canada.

17. The Schlegel Manufacturing Company since prior to June 30, 1938, owned all of the issued capital stock of the Schlegel Company of Canada, Limited, consisting of 1,175 shares of $100 par capital stock. The plaintiff, Charles P. Schlegel, is and at all times has been the president of Schlegel Company of Canada, Limited.

18. The average net annual income in American funds of Schlegel Company of Canada, Limited, for the five fiscal years ending June 30, 1940, was $43,045.96, an average per share of $36.63. The Schlegel Company of Canada has never declared nor paid a dividend on its capital stock.

19. The Schlegel Company of Canada, Limited, has invested part of its accumulated earnings in stock and bonds of other companies which, on February 10, 1941, had a ready market value of $244,407.

20. It has been leasing a plant since its formation but has purchased land and has plans almost completed for a new plant at a preliminary estimated cost of about $400,000 but has no definite plan for building

at any definite time. The land was purchased since February 10, 1941.

21. On February 10, 1941, the stocks of three competitors of Schlegel Manufacturing Company, viz. Vogt, Collins & Aikman and National Auto Fibre, were selling on the average on recognized stock exchanges at 5.9 times their average earnings for the five fiscal years next preceding that date.

22. Each share of stock of Schlegel Manufacturing Company represented on February 10, 1941, in addition to its equity in the manufacturing business, ownership of readily saleable securities held by Schlegel Manufacturing Company and by the Schlegel Company of Canada having a value per share in excess of $230.

23. The market value of these readily saleable securities owned by the two companies was a relevant factor having a bearing on the value of Class B stock of Schlegel Manufacturing Company.

24. The accumulated surplus of the Schlegel Company of Canada, Limited, invested in securities and not needed by that company in the operation of the business was a relevant factor having a bearing upon the value of Class B stock of Schlegel Manufacturing Company.

25. The surplus invested in securities by Schlegel Manufacturing Company was neither required nor used in the company's manufacturing business.

26. The surplus invested in securities by the Schlegel Company of Canada was neither required nor used in the company's manufacturing business.

27. The fair market value of 100 shares of Class B stock of Schlegel Manufacturing Company on August 1, 1940 was not less than $360 per share.

28. The fair market value of 400 shares of Class B stock of Schlegel Manufacturing Company on February 10, 1941 was not less than $360 per share.

### Conclusions of Law

1. The deficiencies assessed against the plaintiff on the basis of the two gifts recited in the Findings of Fact were properly assessed and collected.

2. The plaintiff has failed to show that the value of $360 per share for Class B stock of Schlegel Manufacturing Company adopted by the Commissioner in assessing the deficiencies was more than the fair market value of the stock in accordance with the standards of valuation fixed by the statute, 26 U.S.C.A.Int.Rev.Code, § 1005, and Treasury Regulation 108, Section 86.-19(c).

3. The defendant is entitled to judgment dismissing the complaint with costs