20089

SANTEE OIL COMPANY, INC., Respondent, v.
Marsden H. COX, Jr., Appellant

(217 S. E. (2d) 789)

*Messrs. Turnipseed and Rothwell,* of Columbia, *for Appellants.*

*D. Laurence McIntosh, Esq.,* of *Wright, Scott, Blackwell & Powers,* Florence, *for Respondent.*

*Messrs. Turnipseed and Rothwell,* of Columbia, *for Appellants,* in Reply.

September 2, 1975.

BUSSEY, Justice:

Pursuant to the provisions of the South Carolina Business Corporation Act of 1962, S. C. C. A. 12-11.1 *et seq.* (1974 Supp.), Services, Incorporated, a South Carolina corporation, was merged with the plaintiff, Santee Oil Company, Incorporated, another South Carolina corporation, on September 30, 1971. When appellant, a minority stockholder in both companies, duly objected to the merger, respondent,

the surviving corporation, instituted this statutory proceeding, to have the "fair value" of the dissenter's shares determined "as of the day prior to the date on which the vote was taken approving the proposed corporate action," September 17, 1971, and paid by the surviving corporation, the plaintiff-respondent. S. C. C. A. 12-16.27(a), (i)(1) (1974 Supp.). See 15 S. C. L. Rev. 275, Symposium of South Carolina Corporation Law.

The circuit court found the value of the assets of the respondent, after merger, to be the sum of $1,032,214. The circuit court found the fair value of appellant's 37.5% of the shares of stock to have a fair value of $387,080. Interest thereon at the rate of 6% per annum was awarded with the question of attorneys' fees and expenses left open for future determination. Appellant's exceptions are three in number, but in essence they raise only a single contention, to wit: that the valuation of appellant's shares of stock by the circuit court was manifestly against the greater weight and clear preponderance of the evidence.

The stated contention presupposes that this is an equitable proceeding wherein this Court is empowered, upon appeal, to review the evidence and make its own findings of fact. If it be an action of law the circuit court's findings of fact would be binding upon this Court if supported by any competent evidence. We are inclined to agree with the appellant's contention that the proceeding is essentially equitable in nature, but under the circumstances of the case we need not, we think, pursue the issue at length or decide whether or not this statutory proceeding is purely and exclusively an equitable one as, in our view, upon a review of the record, the appellant is not in either event entitled to prevail.

As a necessary step to resolving whether the circuit court correctly determined the fair value of appellant's shares we must consider the meaning of "fair value" as the statute itself does not define that term.. No prior decision of this

Court has come to our attention which is at all helpful, but courts of other states, particularly the courts of Delaware, the home of so many corporations, have had fairly frequent occasions to define and apply such term under corporation law similar to ours.

The act's explicit reference to value of shares indicates that fair value means "intrinsic value." *Application of Delaware Racing Assoc.,* 213 A. (2d) 203, 211 (Del. 1965). But "fair value" does not restrict the appraising court to the use of any one method of valuation. "Market value undoubtedly is a pertinent consideration. So is net asset value. Neither, however, deserves necessarily to be accepted as exclusive." *Chicago Corp. v. Munds,* 20 Del.Ch. 142, 172 A. 452, 457 (1934).

"It is, of course, axiomatic that if there is an established market for shares of a corporation the market value of such shares must be taken into consideration in an appraisal of their intrinsic value. And if there is no reliable established market value for the shares a reconstructed market, if one can be made, must be given consideration. It is, of course, equally axiomatic that market value, either actual or constructed, is not the sole element to be taken into consideration in the appraisal of stock." Application of Delaware Racing Assoc., *supra* (citations omitted).

In essence the trial court must undertake to compute the fair value by establishing "the fair market value of the corporate property as an established and going business." *Phelps v. Watson-Stillman Co.,* 365 Mo. 1124, 293 S. W. (2d) 429, 432 (1956) citing *Ahlenius v. Bunn & Humphreys,* 358 Ill. 155, 192 N. E. 824, 829 (1934). When attempting such an evaluation each case must be decided upon its own facts and circumstances.[1] *"Every relevant fact and circumstance* which enters into the value of the corporate property and which reflects itself in the worth of the corporate stock * * *,"* (Emphasis added), *Phelps v.*

---

[1] The cases are collected in Dec. Dig., Corporations, Key 182(4), 584.

*Watson-Stillman Co., supra,* 293 S. E. (2d) at 433, citing 45 Har. L. Rev. 233, 262, must be considered. See Annot. 48 A. L. R. (2d) 430 (1973) for an extensive treatment of the problem. Under the weight of authority the three major factors to be considered are: (1) net asset value; (2) market value; and (3) the earnings or investment value of the dissenting stock. There are, of course, sub-factors involved in each of the major factors, the variety thereof being indicated by the following quote.

"* * * (V)arious factors which all agree should be considered in valuing the common stock * * * were: The nature of the enterprise, i. e., a regulated closed-end investment company; leverage; discount; net asset value; market value; management; earnings and dividends; expenses of operation; particular stockholdings in * * * portfolio; and * * * tax situation." *Tri-Continental Corporation v. Battye,* 31 Del. Ch. 523, 74 A. (2d) 71, 73 (1950).

■ After these various factors have been considered and determined in a given case they should then be weighed as to their relative bearing upon the ultimate question of the fair value of the dissenting stock, *Application of Delaware Racing Assoc., supra; Francis I. Du Pont & Co. v. Universal City Studios, Inc.,* 312 A. (2d) 344, 346, 352 (Del. Ch. 1973); and a final determination of value made.

Before proceeding to consideration of the evidence we think it important to comment on a matter which was responsible for the extensive evidentiary hearings and some resultant confusion of the issues. Instead of itself appointing an appraiser or appraisers, S. C. C. A. 12-16.27(i)(4), the circuit court, apparently by consent, permitted each party to appoint an appraiser upon the stipulation that the appointed appraisers would appoint a third. As a result of such proceedings no final, unitary recommendation on the question of value was made, because the appraisers could not agree and further hearings had to be held.

Santee Oil Company, a closely held family corporation, operates a Shell Oil jobbership generally located in Williamsburg, Georgetown, Marion, Dillon and Berkeley Counties. After the merger it owned numerous pieces of real estate on which were located service stations, bulk plants, etc.

While the circuit court had proof of: (1) market value; (2) book value; (3) asset value; and (4) earnings and dividends before it, only asset value was given any direct weight in the final award. This was error, but it was occasioned by the parties. One may not complain of invited error and moreover any error in this respect was, in our view of the record, harmless to appellant.

We deal with the evidence only to the limited extent necessary to show that, in our view, the lower court's finding as to the fair value of the stock was not against the clear weight and preponderance of the evidence. The circuit court found the net asset value of the corporation to be $1,032,-214.00. The book value thereof was the sum of $635,516.00. Such is here quite relevant because of the testimony of one of the appraisers, uncontradicted, that two somewhat similar Shell jobberships in South Carolina had been up for sale for over two years and that to his knowledge no offer in excess of the book value of the jobberships had been made to the controlling stockholders.

While there were appraisals of portions of the assets by other appraisers, who testified, only three appraisers undertook to appraise the net value of all of the corporate assets. We deal with such appraisals of total assets in thousand dollar figures only. The high appraisal was in the amount of $1,375,000.00, but errors therein, developed on cross-examination, reduced it to $1,304,000.00. The next highest appraisal was in the amount of $1,169,000.00, and the low appraisal was in the amount of $895,000.00. The lowest appraiser took into consideration a number of factors, recognized as appropriate in other jurisdictions, in addition to asset value, in arriving at his appraisal. The high ap-

praisal was predicated strictly on asset value without taking into consideration other factors having a bearing upon a fair value of the stock. The average of the three appraisals was the sum of $1,122,666.00.

Dividends paid by the corporation for the years 1969 through 1971 yielded on the basis of a valuation of $1,000,000.00, a return of 2.25%, 2.75% and 2.25%. Of course, the higher the valuation the lower the percentage yield. The average earnings of the corporation for these three years amounted to $53,748.00 per annum. An accepted method for determining the capitalization, or stock value, of a corporation is to multiply its earnings by an appropriate multiplier (price/earnings ratio). The evidence is uncontradicted that during the pertinent period of time oil stocks generally were selling at a price/earnings ratio lower than 12 to 1. Thus, in the light most favorable to the appellant we use 12 as a multiplier with the following result: 12 x $53,748 = $644,976.00, average capitalized earnings of the corporation over the three year period.

Approximately nine months prior to the merger there was a willing buyer and purchaser sale of 10% of the shares in both corporations, and on the basis of this sale, all the stock in both corporations was worth $931,603.00. In brief summary the principal factors involved in determining the "fair value" of appellant's shares are as follows:

Average appraisal of net assets ............$ 1,122,666
Market value of stock ....................    931,603
Capitalized earnings .....................    644,976

Of these factors we are inclined to the view that, under the evidence, greater weight should be given to the net asset value factor than any other factor, but that the other factors have a real impact upon what in truth was the fair value of appellant's shares of stock. We need not determine whether the following relative weights of the different factors is precisely correct, but such are sufficient to demon-

strate that the lower court's findings of fact as to the valuation of appellant's shares of stock was not against the clear weight and preponderance of the evidence.

| Value Factor | | Weight | |
|---|---|---|---|
| Net asset value | 1,122,666 | 70% | $ 785,866 |
| Market value | 931,603 | 15% | 139,740 |
| Capitalization earn. | 644,976 | 15% | 96,746 |
| Total value of corporation stock | | | $ 1,022,352 |

The foregoing is the methodology which is almost universally followed and applied in other jurisdictions in arriving at the fair value of stock in cases such as this. The relative weight to be given to the different factors, of course, varies in the light of the evidence. Appraisal is, of course, not an exact science and the precise weight to be given to any factor is necessarily a matter of judgment, for the court, in the light of the circumstances reflected by the evidence in the individual case. The valuation of the stock of the corporation found by the lower court was some $10,000.00 in excess of our calculation above. While our calculation may not be entirely accurate, such is certainly not unreasonable in light of the evidence and is sufficient to show that the result reached by the lower court was not opposed to the clear weight and preponderance of the evidence. The appellant has failed to demonstrate any prejudicial error and the judgment below is accordingly,

Affirmed.

Moss, C. J., and LEWIS, LITTLEJOHN and NESS, JJ., concur.