0290

Charles L. DIBBLE, Respondent, v. SUMTER ICE
AND FUEL COMPANY, Appellant.

(322 S. E. (2d) 674)

Court of Appeals

*John D. Lee, Jr.,* and *M. M. Weinberg, Jr.,* of *Lee, Wilson, Erter & Booth,* Sumter, *for appellant.*

*Edward V. Atkinson,* of *Atkinson, Newman & Davis,* Sumter, and *Cooper, Bowen, Beard & Smoot,* Columbia, *for respondent.*

Oct. 2, 1984.

CURETON, Judge:

Respondent, Charles L. Dibble, brought this action against appellant, Sumter Ice and Fuel Company (Corporation), alleging he was frozen out of the Corporation without adequate compensation and in breach of the majority shareholder's fiduciary duty to him. After certain preliminary determinations, the matter was referred to a special referee. The special referee found Dibble entitled to $5,552.83 more than he had received in the purported dissolution. Upon appeal to the circuit court, the award was increased to $16,640. Additionally, punitive damages of $100,000.00, attorney's fees and expert witness' fees were awarded. The Corporation now appeals. We affirm in part and reverse in part.

For several years prior to 1969, the Corporation had attempted to buy back and retire the ten shares of its stock owned by Dibble. On March 13, 1969, the Corporation's board of directors voted to go into liquidation. A meeting of the stockholders was called for April 18, 1969. The notice of the stockholders' meeting, on the Corporation's letterhead, indicated the date and time of the meeting but not the place. As a result, Dibble claimed not to have known the place of the meeting and did not attend. At the meeting, the holders of six hundred and twenty-eight of the six hundred and forty-eight outstanding shares of the Corporation, owned primarily by E. H. Moses, Jr. and his brother, D. H. Moses, voted to dissolve. The shareholders also voted than an appraisal would be made of the Corporation's assets; that the Moses brothers would receive the physical plant (operating assets) of the Corporation, and that the other shareholders would receive the appraised value of their shares in Georgia-Pacific stock then owned by the Corporation.

After the dissolution, the Moses brothers received the operating assets of the Corporation and continued the business of the Corporation under the partnership name SIFCO. In his complaint, Dibble complained that the majority stockholders failed to comply with corporate dissolution statutes and accused them of having a preconceived plan to nullify the value of his stock while retaining the assets of the Corporation. He asked that the dissolution be set aside, and accounting be

made and that he be awarded actual and punitive damages.

Judge Ness (then on the trial bench) in a 1972 order found that Dibble had indeed been "frozen-out" of the Corporation and referred the matter to a special referee for:

> the taking of testimony regarding the value of the good-will and physical assets of the Corporation. The [special referee] will consider the transfer of the assets to [SIFCO] as a sale of the business and will consider the value accordingly, and provide relief including such other matters as may be equitable and just.

The special referee determined that the net asset value of the Corporation was $3,066,891 and valued the Corporation's goodwill at $360,000 for a total liquidation value of $3,426,891. He then determined that Dibble's 1.543% interest in the Corporation should be valued at $52,881.40 or $5,552.83 more than Dibble had received from the liquidation.

In arriving at this value, the special referee found that there were two possible approaches to valuing the Corporation: net asset value approach and the capitalization of earnings approach. He concluded that in isolation neither approach accurately valued the Corporation; the net asset method did not account for goodwill and the capitalization of earnings method over-valued goodwill. He then utilized a composite of the two approaches, assessing a weight of sixty-six and two-thirds percent to the value obtained by the net asset method and thirty-three and one-third percent to the value obtained by the capitalization of earnings method. He also found that the circumstances did not establish fraud and there was no basis to award punitive damages. Finally, he awarded interest on his award from the date of liquidation plus court costs. Both parties excepted to the referee's decision.

The circuit court disagreed with the referee's valuation formula and found that the capitalization of earnings method best measured the value of the Corporation. The circuit judge adopted Dibble's expert witness' valuation of the Corporation and concluded Dibble was entitled to recover $16,640.30 more than he had received. He also found that the majority stock-holders had converted Dibble's interest in the Corporation to

their benefit in violation of a fiduciary duty and awarded $100,000 punitive damages, interest, attorney's fees and costs.

The Corporation argues three questions on appeal (1) whether Judge Ness's unapppealed 1972 order precluded consideration by the referee and subsequent trial judge of all issues, except the valuation of the physical assets and goodwill of the Corporation, (2) whether the trial judge erred in several findings of fact and conclusions of law in support of his award of actual and punitive damages, and (3) whether the trial judge erred as a matter of law in awarding interest, attorney's fees and an expert witness' fee.

## I.

We first address the question of what matters Judge Ness's order concluded. Dibble concedes that any matters disposed of in Judge Ness's order are now the law of the case, *Matheson v. McCormac*, 187 S. C. 260, 196 S. E. 883 (1938), and one circuit judge cannot reverse the ruling of another circuit judge. *Cook v. Taylor*, 272 S. C. 536, 252 S. E. (2d) 923 (1979). A review of Judge Ness's order reveals he found that the majority stockholders had a fiduciary duty "to exercise their managerial prerogatives with respect for the interest of minority shareholders." Judge Ness then found that Dibble had not been adequately compensated for his stock. The question posed is whether Judge Ness intended to conclude Dibble's right to punitive damages, interest, attorney's fees and costs. We think not. An order should be construed within the context of the proceeding in which it is rendered. *Ferracuti v. Ferracuti*, 27 Ill. App. (3d) 495, 326 N. E. (2d) 556 (1975); 56 Am. Jur. (2d) *Motions, Rules* and *Orders*, Section 29 (1971). Judge Ness's order referred the matter to the referee for appropriate relief "including such other matters as may be equitable and just." We think this language, when viewed in the context of the case, did not preclude the referee and subsequent circuit judge from considering Dibble's claims for punitive damages, interest, attorney's fees and costs.

## II.

The Corporation next argues error on the part of the trial judge in several of his findings of fact and conclusions of law, but in essence its basic contention is that the valuation of Dibble's shares of stock by the circuit judge was manifestly against the greater weight of the evidence. In an equity matter where the circuit judge and special referee are in disagreement as to the facts, this court may find the facts in accordance with its view of the evidence. *Price v. Derrick*, 262 S. C. 341, 204 S. E. (2d) 389 (1974).

Relative to the issue of actual damages, our review of the case from this and other jurisdictions convinces us than the special referee's valuation was correct. The expert witnesses for both parties agree that the net asset value found by the referee is correct.[1] Dibble's expert contends, however, that this value does not reflect the actual value of the Corporation because it does not show the value of a franchise, nor does it include the Corporation's goodwill. He would add to the net value the sum of $69,698.12 (the sales price of the Royal Crown franchise sold on June 1, 1971) and $1,008,982.50 for the Corporation's goodwill.[2]

---

[1] The net asset value is taken from the Corporation's final balance sheet dated December 31, 1969.

[2] The $1,008,982.50 value is arrived at by averaging the gross operating income of the six divisions of the company for the six years, 1967 through 1972, then capitalizing these earnings at the rate of 15%, except for the coal division which was capitalized at 25%. Dibble's expert's computations are as follows:

|  | Sale of Business Value |
|---|---|
| Heater & Air Condition Division | 461,807.80 |
| Home Heater Division | 100,944.00 |
| Oil Division | 346,037.60 |
| Ice Division | 186,455.87 |
| Coal Division | 50,872.44 |
| Air Filter Division | 381,697.07 |
| Total | 1,527,814.78 |
| LESS LIQUIDATING VALUE OF NET OPERATING ASSETS ($3,066,891.00, less value of Georgia-Pacific stock, a non-operating asset) | 518,832.28 |
| SALE OF BUSINESS VALUE IN EXCESS OF LIQUIDATING VALUE OF OPERATING ASSETS | 1,008,982.50 |

On the other hand, the Corporation argues that it had no goodwill and that the net asset value best represented the actual value of the Corporation. The referee disposed of this contention as follows:

> The testimony of the defendant that there was no goodwill in the corporation flies in the face of the advertisements used by its successors to the business informing the public that SIFCO was the same business with a new name. They must have thought there was some economic value in the continuing business.

We agree. The principal question therefore becomes: what was the value of the Corporation's goodwill on the date of liquidation and what method or combination of methods best accounts for that goodwill?

In determining the fair value of the Corporation on date of liquidation we are instructed in *Metromont Materials Corp. v. Pennell*, 270 S. C. 9, 239 S. E. (2d) 753 (1977) and *Santee Oil Co. v. Cox*, 265 S. C. 270, 217 S. E. (2d) 789 (1975) to consider the Corporation's (1) net asset value, (2) its market value, and (3) its earning or investment value. After these factors have been considered and determined, they should then be weighed as to their relative bearing upon the ultimate question of the fair value of Dibble's stock. *Id.* at p. 274, 217 S. E. (2d) 789.

Stock of closely held corporations such as Sumter Ice and Fuel, cannot reasonably be valued by application of any inflexible formula; one tailored to the particular case must be found. That can be done only after a discriminating consideration of all relevant facts and circumstances bearing upon the stock's value. *Snyder's Estate v. United States*, 285 F. (2d) 857 (4th Cir. 1961); *Phelps v. Watson Stillman Co.*, 365 Mo. 1124, 293 S. W. (2d) 429 (1956), cited in *Santee Oil.*

The Georgia-Pacific stock constituted $2,548,059.40 or eighty-three percent of the Corporation's net asset value. Presumably, the majority of the Corporation's income was also derived from dividends from this stock. Therefore, Dibble's expert witness was in error in characterizing the Corporation as principally a business engaged in selling products and services to the public. To the contrary,

the Corporation was essentially an investment company. The value of the Corporation was directly related to the value of the stock held by it. The first step in valuing corporations of this type is to determine the fair value of its assets. The market value of the underlying assets give due weight to potential earnings and dividends of the property (stock) underlying the corporation's stock, capitalized at rates deemed proper by the investing public on the date of the appraisal. Thus, greater weight should be afforded the net asset value than any other factor in valuing an investment company. The courts have almost uniformly subscribed to these principles. *Worthen v. U. S.*, 192 F. Supp. 727 (D. Mass. 1961); *Schlegel v. U. S.*, 71 F. Supp. 495 (W. D. N. Y. 1947), *aff'd*, 164 F. (2d) 276 (2d Cir. 1947); *Bassett v. Neeld*, 23 N. J. 551, 130 A. (2d) 1 (1957); *Tri-Continental Corp. v. Battye*, 31 Del. Ch. 523, 74 A. (2d) 71 (1950); *American General Corporation v. Camp*, 171 Md. 629, 190 A. 225 (1937); 2 Am. Jur. PROOF OF FACTS (2d), p. 23 (1974); Annot., 48 A.L.R. 3rd 430, 472; 2 Hood, Kurtz & Shors, *Valuation of Closely Held Stock* Section 9.5 (1982); Stiegelmeier, *Valuation of Closely Held Stock For Estate Tax Purposes*, 45 Ill. Bar. J. 18, 22 (1956).

The parties agree that since the stock of the Corporation had no ready market, no consideration should be given the market value factor. We then think that the referee was correct in assessing greater weight to the Corporation's net asset value than to the capitalization of earnings value in arriving at a value formula. In *Metromont* where, as here, the bulk of the corporation's assets were found in a nonoperating asset (real property), the court approved a weight of ninety-five percent to the net asset value. In *Santee Oil*, the assigned weight for the same type non-operating assets was seventy percent of the net asset value. This is so because the non-operating assets (in this case, Georgia-Pacific stock) are not dependent on the "on-going" business concept for part of their value. As stated in *Worthen v. U. S., supra:*

> Where a corporation holds a large portion of its assets, not needed or used in its business operations, in the form of an investment in securities, it can readily be seen that a stockholder in control of the corporation can at anytime without affecting the business operations of the corporation cause this investment to be liquidated and the pro-

ceeds distributed to stockholders either as a dividend or by way of partial liquidation, or else can cause the securities themselves to be distributed in kind.

We adopt the following pertinent findings of the special referee as the decision of this court on the question of the value of Dibble's interest in the Corporation on the date of liquidation.

> Considering all factors, the weight to be given to capitalization of earnings by Mr. Teal is 33⅓ % and that of the net asset value of the corporation is 66⅔ %. On that basis the company had a fair market value at the time of liquidation as follows:

| | | |
|---|---|---|
| Net Asset ...... | $3,066,891.00 x 66⅔ % | $2,044,390.00 |
| Capitalization of Earnings .... | 4,145,527.00 x 33⅓ % | 1,381,719.00 |
| Total Value .. | | $3,426,109.00 |

This determination of $3,426,109.00 is the fair market value of the company and is $359,218.00 above the net asset value of the company. This may be rounded off to $360,000.00 as the goodwill of the company.

The end result is that the net liquidation value of the company is increased by $360,000.00 to $3,426,891.00. On that basis each share was entitled to $5,288.14. The plaintiff was paid on the basis of $47,328.57 as his liquidating dividend. This dividend should have been in the amount of $52,881.40. The plaintiff is, therefore, entitled to recover as an additional liquidating dividend the sum of $5,552.83 plus interest.

On the question of punitive damages, we hold that ▆▆▆▆ Dibble is not entitled to recover punitive damages. This suit was pled as an equity case. Judge Ness also characterized it as equitable and referred it to a special referee.[3] It is settled law that punitive damages may not be recovered in an equity suit. *Jacobson v. Yaschik*, 249 S. C. 577, 155 S. E. (2d) 601 (1967); *Standard Warehouse Co. v. Atlantic Coast Line R. Co.*, 222 S. C. 93, 71 S. E. (2d) 893 (1952); *Bratton v. Catawba*

---

[3] See South Carolina Code Section 15-31-20 for the types of cases that may be mandatorily referred to a special referee.

*Power Co.,* 80 S. C. 260, 60 S. E. 673 (1908). Moreover, we do not think the facts of this case warrant an award of punitive damages. The trial judge found that "there is nothing to prevent a dissolution or freeze-out so long as adequate compensation is paid (citation omitted)." We agree. In view of our decision that Dibble was not grossly underpaid for his stock, we see no basis for the award of punitive damages.

## III.

Finally, we discuss the issues of interest, attorney's ▇▇▇fees and expert witness' fees. In the absence of an agreement or statute, interest is not recoverable on an unliquidated claim. *Llewelyn v. Dobson Bros.,* 274 S. C. 177, 262 S. E. (2d) 726 (1980). A claim is liquidated if the sum claimed is certain or capable of being reduced to a certainty. *Columbia Lumber & Mfg. Co. v. Globe Indemnity Co.,* 166 S. C. 408, 164 S. E. 916 (1932); *Ancrum v. Slone,* 29 S.C.L. (2 Speers) 594 (1844); 22 Am. Jur. (2d) *Damages* Section 180 (1965). The facts of this case amply demonstrate that Dibble's claim was not capable of being reduced to a certainty. We must accordingly reverse the award of prejudgment interest.

The Corporation next argues that Dibble should not ▇ have been awarded attorney's fees because Judge Ness found that this action is not premised upon Code Section 33-11-270 and there is no other statutory or other basis for the award. Dibble argues, however, that Judge Ness's order does not preclude the use of that code section as a basis for the award of attorney's fees. We are persuaded by the Corporation's argument. Judge Ness's order plainly indicates that this suit is not statutorily based, but brought in equity. Dibble thus cannot recover attorney's fees unless authorized by contract or his action falls within that category of cases where equity allows an attorney's fee to a party for the recovery or preservation of a fund. *Snider v. Butler,* 278 S. C. 231, 294 S. E. (2d) 246 (1982); *Caughman v. Caughman,* 247 S. C. 104, 146 S. E. (2d) 93 (1965). We find no statutory, contractual or equitable basis for awarding attorney's fees and therefore reverse the award.

Finally, the Corporation raised by exception the award of a fee to Dibble's expert witness. The Corporation's brief does

not argue this exception and it may consequently be deemed abandoned. *State v. Sullivan,* 277 S. C. 35, 282 S. E. (2d) 838 (1981).

Accordingly, the order of the trial judge is

Affirmed in part and reversed in part.

SANDERS, C. J., and GARDNER, J., concur.

## ORDER

*Per Curiam:*

After a careful consideration of this petition, the Court is unable to discover that any material fact or principle of law has been either overlooked or disregarded. However, in view of the point raised in respondent's Brief that the matter should be remanded for determination of a fee to be awarded Dibble's expert witness,

It is ordered that this case be remanded for the sole purpose of establishing such fee. Otherwise, the opinion of this court remains as previously rendered.

Let the stay of *remittitur* heretofore granted be revoked ten days subsequent to the filing of this order.