826 F.2d 1060
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Mario SALVADOR, Plaintiff-Appellee,
v.
GLOBAL AMERICAN RESOURCES, INC.; Thomas G. Clines; Glenn
A. Robinette; J. Gary Steele, Defendant-Appellant.
Mario SALVADOR, Plaintiff-Appellant,
v.
GLOBAL AMERICAN RESOURCES, INC.; Thomas G. Clines; J.
Gary Steele; Glenn A. Robinette, Defendant-Appellee.
Mario SALVADOR, Plaintiff-Appellant,
v.
GLOBAL AMERICAN RESOURCES, INC.; Thomas G. Clines; J.
Gary Steele; Glenn A. Robinette, Defendant-Appellee.
 Nos. 86-1629(L), 86-1640 and 86-1664.
 United States Court of Appeals, Fourth Circuit.
 Argued April 8, 1987.
Decided Aug. 3, 1987.
 
 D.S.C.
 AFFIRMED.
 Appeal from the United States District Court for the District of South Carolina at Charleston. Falcon B. Hawkins, District Judge. (CA-84-1554-1).
 Fred Thompson, III (Scardato & Thompson; A. Hoyt Rowell, III, on brief), for appellants.
 E. LeRoy Nettles, Sr. (Marian D. Nettles; Nettles, Floyd, Turbeville & Reddeck, on brief), for appellee.
 Before PHILLIPS, ERVIN and CHAPMAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 This appeal and cross-appeal arise from what was initially an action by appellee, Mario Salvador, on a promissory note that each non-corporate appellant, Thomas Clines, Glenn Robinette and Gary Steele, had personally guaranteed. The note was given by Global American Resources, Inc. to appellee as part of a Stock Purchase Agreement which eventually went awry. The issues on appeal range from discovery and interest awarded on the jury verdict to the sufficiency of the evidence and inconsistent jury verdicts. Because we hold that the trial court did not err in its holdings and that the alleged inconsistent jury verdict was not properly objected to, we affirm.
 
 
 2
 * Appellee Mario Salvador owned 100% of Sisco, Inc., a South Carolina corporation involved in the production of well screen and pipe slotters. Well screen is the lower portion of pipe which is drilled into oil or water bearing strata. Pipe slotters are the machines that actually slot the pipes to produce well screen for sale.
 
 
 3
 Global American, the corporate appellant, was founded in June 1982. Two of the three non-corporate appellants, Glenn Robinette and Gary Steele, own all of the stock in Global American. The third appellant, Tom Clines, is neither a shareholder, officer nor director in Global American. He is a close consultant to and personal friend of Robinette and has loaned money to Global American. Global American was formed in an effort to combine the experience and contacts of Robinette in international commerce with the construction expertise and experience of Steele. Because of other commitments by the shareholders, the ill fated investment in Sisco appears to be the only business venture undertaken by Global American.
 
 
 4
 Global American and Sisco first came into contact in 1982. Global American was apparently interested in purchasing a portion of Sisco's stock from Mr. Salvador. The parties' first dealings took place in March 1983 when Global advanced $31,250 to Sisco as a loan to allow Sisco to purchase the land and building at its manufacturing site in Georgetown, South Carolina. This advance was also in contemplation of Global buying stock in Sisco. Unbeknownst to the appellants, Salvador himself owned an option on the purchase of 36 acres of land, which included the site of the Sisco plant. Salvador used the loaned funds to purchase the entire tract of land, and then deeded to Sisco only the 16 acres upon which the manufacturing site was located. The remaining 20 acres became the property of Salvador. Ultimately the 20 acres were sold for $125,000.
 
 
 5
 Global American and Salvador began to negotiate for the purchase by Global American of 49% of Sisco's stock. Eventually, the Stock Purchase Agreement was signed. Pursuant thereto Salvador sold to Global 490 shares of Sisco stock for $750,000, of which amount $250,000 was to be paid to Salvador at the time of closing. The Stock Purchase Agreement further provided that the balance of the purchase price, $500,000, was to be paid to Salvador in ten annual, successive payments of principal and accrued interest at the rate of 9% per annum, with each payment being $77,915. In conjunction with this transfer, a note was executed to Salvador obligating Global American to make the payments set forth above. Appellants Clines, Robinette, and Steele jointly and severally guaranteed the full payment and performance of Global American. As security for its payment of indebtedness Global American pledged to plaintiff the 490 shares of corporate stock of Sisco, Inc. transferred to it under the Stock Purchase Agreement and executed a pledge agreement creating a lien on the stock in favor of Salvador.
 
 
 6
 In May 1983, after the signing of the Stock Purchase Agreement but before closing, appellants hired an accounting firm to conduct a review of Sisco, Inc. This review showed several problems with Sisco based upon lack of proper accounting procedures and inadequate inventory records. The report was presented to appellants two days prior to closing and discloses the accounting firm's inability to confirm figures due to unavailable information. There is nothing to indicate that the appellants had any apprehension about closing the deal at this time despite clearly inadequate records.
 
 
 7
 Appellants were dissatisfied with their arrangement with Sisco almost from its inception. In April 1984, the first payment of $77,915 due to Salvador was not timely made and all appellants were promptly notified of the default. Pursuant to the provisions of the note, Salvador exercised his option to declare the entire indebtedness of principal and accrued interest immediately due and payable. Appellants contend that they failed to make their required payments because Salvador had misrepresented the financial condition of Sisco to them and the status of the contract of sale of a pipe slotter to Saudi Arabia. Under the Saudi contract Sisco was to sell one pipe slotter for approximately $600,000.00 with the purchaser having an option to purchase four more.
 
 
 8
 An action was instituted by Salvador in state circuit court in Georgetown County, South Carolina upon the note executed in connection with the Stock Purchase Agreement. He sought judgment against the appellants, jointly and severally, for the balance of the note, attorneys' fees and interest. Salvador obtained an order declaring the Stock Purchase Agreement between himself and appellants null and void. The case was removed to U.S. District Court. The appellants denied liability and set forth certain affirmative defenses, including breach of fiduciary duty by Salvador. Appellants counterclaimed against Salvador claiming fraud, breach of fiduciary duty, and violation of Sec. 10(b)(5) of the Securities Exchange Act of 1935, 15 U.S.C. Sec. 78(j)(5)(1981).
 
 
 9
 Salvador subsequently filed a motion requesting the court to order the defendants to deliver the stock certificates of Sisco, Inc. being held by appellant Steele in escrow pending appellants' payment of sums due under the note. The court granted this motion, and after adequate notice to appellants, the stock was sold at auction to Salvador, the only bidder, for the sum of $100,000.
 
 
 10
 About a week before the trial, having learned that its initial loan to Sisco had been used to purchase 36 acres of land, only 16 of which eventually became the property of Sisco, appellants filed a motion to amend their answer and counterclaim by asserting an additional cause of action seeking the imposition of a constructive trust against the $125,000 Salvador had received for the 20 acres of the 36 acre tract which was not deeded to Sisco. The court allowed this amendment.
 
 
 11
 At trial, the jury returned a verdict for Salvador for the $400,000 remaining due on the note and a verdict for the appellants on their counterclaim for breach of fiduciary duty in the amount of $150,000 and upon their counterclaim for imposition of a constructive trust in the amount of $125,000. The court also awarded Salvador $1,001.18 in costs and $25,000 in attorneys' fees. The district court subsequently granted Salvador's motion for prejudgment interest on his judgment on the promissory note.
 
 
 12
 The parties allege a multiplicity of errors by the trial court on procedural questions and the jury verdict.
 
 II
 
 13
 Appellants' central contention is that the jury verdict in favor of Salvador on his complaint for the $400,000 remaining due on the note is irreconcilable with the verdict for defendants upon their counterclaim for breach of fiduciary duty in the amount of $150,000. The trial court charged the jury that if it found a breach of fiduciary duty by Salvador such breach was a full defense to appellants as against Salvador's efforts to enforce the promissory note. The district court also charged the jury that if it found that Salvador breached his fiduciary duty to appellants, it must determine the damages which appellants had suffered.
 
 
 14
 The trial court is under an obligation to harmonize the answers in apparently conflicting jury findings if it is possible to do so under a fair reading of them. Gosnell v. Sea-Land Service Inc., 782 F.2d 464, 466 (4th Cir.1986). If, however, viewed in the most generous way, the answers are inconsistent with each other, a new trial is ordinarily required. Ladnier v. Murray, 769 F.2d 195, 198 (4th Cir. 1985).
 
 
 15
 It is possible that the verdicts can be harmonized. Arguably, the jury has determined that the events surrounding and leading to the execution of the promissory note did not represent a breach of fiduciary duty by Salvador; but, the jury may have also determined that the subsequent events, including evidence that Salvador wrongly used the monies advanced for unintended purposes, mismanaged accounts, and refused to provide adequate accounting information, was a breach of fiduciary duty which did not avoid the promissory note, yet did support the claim for damages incurred by appellants, after the closing of the transaction, for which Salvador was responsible. In his order denying defendants' JNOV motion the trial judge observed:
 
 
 16
 Contrary to defendants' assertions, however, the jury found no excuse for non-payment of the note and that any misconduct on the part of the plaintiff either occurred after the parties were in business together or was unrelated to the stock purchase transaction. The only evidence presented at trial relating to plaintiff's breach of fiduciary duty concerned events that occurred after the parties were in business together, e.g., accounting not produced upon request, asset depletion, lack of cooperation, etc.
 
 
 17
 This is consistent with South Carolina Law. Glenn v. Rosenborough, 48 S.C. 272, 26 S.E. 611 (1897).
 
 
 18
 While this reconciliation of the verdicts may be persuasive; it is unnecessary. At oral argument we learned that neither party objected to the irreconcilability of the verdicts, and the trial judge did not note a problem with the jury's verdict. Whether it was because of simple inadvertence or because they were too stunned by the verdict to react, the parties failed to preserve this issue for appeal. Diamond Shamrock Corp. v. Zinke & Trumbo, Ltd., 791 F.2d 1416, 1423 (10th Cir. 1986). Therefore, the verdict of the jury must be affirmed.
 
 III
 
 19
 The evidence at trial indicates that appellants guaranteed the payment of the promissory note after extensively investigating the entire operation at Sisco. The Stock Purchase Agreement was executed following input from all parties and the review of Sisco by accountants hired by appellants. The evidence shows that the relations between the parties only began to break down after difficulties arose in finalization of contracts with foreign governments for sale of pipe slotters. Because there is substantial evidence to support the jury's verdict, the trial court did not err in refusing to grant appellants' motion for a new trial or their motion for judgment notwithstanding the plaintiff's verdict. See Evington v. Forbes, 742 F.2d 834 (4th Cir. 1984).
 
 
 20
 Appellants also argue that the trial court erred in refusing to grant their motion for a new trial or judgment N.O.V. on their counterclaims for fraud and for violation of Sec. 10(b)(5). The issues of misrepresentation and deceit inherent in any fraud or SS 10(b)(5) action are traditionally the province of the jury. Under South Carolina law, if more than one reasonable inference may be drawn from the evidence, then the question of fraud is for the jury. Cooke v. Metropolitan Life Insurance Company, 186 S.C. 77, 194 S.E. 636 (1938). Similarly, the bulk of all issues in a trial regarding Sec. 10(b)(5) are questions for the jury. See S.E.C. v. National Executive Planners, Limited, 503 F.Supp. 1066 (M.D.N.C. 1980) (scienter is an issue for the fact finder to infer from all the evidence in the case). Because evidence exists that Salvador did not deceive the appellants, the district judge did not err in overruling these motions.
 
 IV
 
 21
 Appellants also contend that the district court erred in awarding pre-judgment and post-judgment interest at the rate of 9% on Salvador's $400,000 verdict. The note originally called for 9% interest on the $400,000 obligation and the district court properly held that where a sum claimed is certain, or capable of being reduced to certainty, pre-judgment interest is recoverable. Dibble v. Sumter Ice & Fuel Company, 283 S.C. 278, 287, 322 S.E.2d 674, 679 (Ct.App. 1984).
 
 
 22
 Appellants argue that if the district court awarded pre-judgment interest to Salvador on the note, it should have also awarded pre-judgment interest to them on their jury verdicts creating a constructive trust and finding a breach of fiduciary duty. Interest, however, is not recoverable if a claim is not either certain or capable of being reduced to a certainty. Claims arising out of breach of contract or out of tort are traditionally held to be unliquidated: uncertain and incapable of being reduced to a certainty; therefore, pre-judgment interest will not be allowed on those claims. Dibble, 283 S.C. at 287, 322 S.E.2d at 679.
 
 V
 
 23
 Appellee Salvador contends that the district court erred in denying his motion for a judgment N.O.V. or a new trial on the verdict imposing a constructive trust. The theory of constructive trust is that, if money is wrongfully obtained from a party for the benefit of the wrongdoer, any benefit which the wrongdoer gains is held in constructive trust for the wronged party. See Finley v. Hughes, 106 F.Supp. 355 (E.D.S.C. 1952). Salvador borrowed approximately $31,250 from the appellants ostensibly for use by Sisco in obtaining another loan to purchase 16 acres of land upon which Sisco was located. In reality, Salvador used the funds to obtain loans to purchase 36 acres of land. Playing fast and loose with the title, Salvador purchased the land personally and then deeded 16 acres of land, upon which the manufacturing plant stood, to Sisco and kept the remaining 20 acres for himself. This 20 acre tract of land was sold for $125,000. The jury returned a verdict for $125,000 against Salvador on appellants' counterclaim for constructive trust. This is a case of a wrongdoer profiting from wrongful use of the money of another. There is ample evidence to support the jury verdict on this matter.
 
 
 24
 This court has considered the other questions raised on appeal by appellants and cross-appellants and finds them to be without merit. For the foregoing reasons, the decision below is hereby affirmed.
 
 
 25
 AFFIRMED.