THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD
NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY
PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Brenda Phillips, individually and as shareholder of Personnel Solutions, 
 Inc., a South Carolina Corporation,       
Plaintiff,
 
 
 

v.

 
 
 
William D. Brown, Charles Lee Smith, Robert J.
Burnstein, Express Temps, 
 Inc., Tri Core East, Inc., and Burnstein & Strickland, P.C. and Ruby 
 Cromer,        Defendants,
And
Charles Lee Smith, Robert J. Burnstein, Express Temps, Inc., Tri Core 
 East, Inc., and Burnstein & Strickland, P.C.,       
Third Party Plaintiffs,
 
 
 

v.

 
 
 
Kim Whisnant, Personnel Solutions, Inc., Preferred Personnel, Inc. and 
 Staffing Associates, Inc.,        Third Party Defendants,
of whom William D. Brown is the,       
Appellant,
And
Brenda Phillips, individually and as shareholder of Personnel Solutions, 
 Inc., a South Carolina Corporation is the,       
Respondent.
 
 
 

Appeal From Spartanburg County
Charles B. Simmons, Jr., Special Referee

Unpublished Opinion No. 2004-UP-135
Heard January 13, 2004  Filed February 
 27, 2004

AFFIRMED

 
 
 
Matthew A. Henderson and Joshua M. Henderson, both of Spartanburg, 
 for Appellant.
Kenneth C. Anthony, Jr., of Spartanburg, for Respondent.
 
 
 

PER CURIAM:  In this business divorce, 
 William D. Brown appeals the special referees valuation of his ownership interest 
 in Personnel Solutions, Inc.  (PSI).  We affirm.
FACTS
Brown and Brenda Phillips met while both 
 were working for Personnel, Inc., a temporary services provider.  In 
 1991, they decided to leave Personnel, Inc., and form PSI, their own competing 
 company.  Because of the possibility of legal action by their former 
 employer to enforce the non-compete agreements each had signed, PSI was established 
 showing Phillips as the sole shareholder of the corporation. [1]   Both parties, however, agreed orally 
 that in reality each held a one-half interest in the business.  
After a few years in business, 
 the parties formed Express Temps (ET), which was set up solely in Browns name.  
 ET was established as a separate company that was to act solely as a pass 
 through corporation.  The desired result was that permanent employees of PSI 
 would be allowed greater benefits and PSIs many temporary employees would now 
 be officially employed by ET, which would have much lower workers compensation 
 premiums because, as a new company, it had no history of workers compensation 
 claims.  At this point, PSI, although still in fact the temporary services 
 provider, was on paper merely a management firm with ET as its sole client. 
 [2] 
In October 1995, the company accountant 
 alerted Phillips that Brown had been embezzling money from PSI for some time.  
 After confronting Brown, Phillips agreed that, if Brown completed a treatment 
 program for his gambling and other addictions, he could return to PSI although 
 he would have no control over the company finances.  The parties further 
 agreed that Phillips would be allowed certain payments over time from the company 
 to her own personal accounts until the disparity between their compensations 
 was eliminated.
After completing the treatment 
 program, Brown attempted to return to work at PSI.  According to Phillips, 
 however, because she had learned that the extent of Browns embezzlement was 
 much greater than she initially believed, she did not allow him to return to 
 the business.  Phillips then established a new corporation, Preferred 
 Personnel, Inc., to essentially take the place of ET.
Brown attempted for a brief time to form his own 
 business under ETs name; however, Phillips subsequently filed this action and 
 secured a temporary order enjoining all parties to the action from operating 
 under that name.  Brown then opened Staffing Associates, a new temporary 
 employment service, and in the process hired approximately one-half of PSIs 
 employees and took a portion of the customer base of PSI.  
During the course of the litigation, the 
 parties stipulated the issues to be decided at trial were (1) the value of PSI 
 and the appropriate date on which the corporation was to be valued, [3] and (2) the amount, if any, due from Brown 
 as a result of his embezzlement from PSI.
By order entered March 27, 2002, the special referee 
 determined the value of Browns interest in PSI to be $16,920 as of December 
 31, 1995. [4]   The special referee also determined 
 that neither party was entitled to damages from the other, having found the 
 amounts Brown embezzled were offset by several large payments made to Phillips 
 from company funds.  Brown appeals only the special referees evaluation 
 of his interest, contending error in the weight given to certain expert testimony 
 and the application of certain discounts in stock value.  
LAW/ANALYSIS
1.  Brown first contends the special referee placed 
 too much weight on the fact that he and Phillips were not bound by a non-compete 
 agreement.  We disagree with this argument.
The presence or absence of a covenant not to compete 
 is a valid factor in determining the worth of a service-oriented corporate entity. 
 [5]   Here, Browns own witnesses acknowledged the detrimental effect of 
 the absence of a non-compete agreement on the attractiveness of PSI to any potential 
 buyers.  Moreover, Browns own actions in this case best illustrate why 
 such a decrease in value was due and proper.  Once prohibited by injunction 
 from interfering with PSI from within, Brown quickly moved into direct competition 
 across the street from the company, taking a substantial number of PSI employees 
 and clients with him.  The value of a service-oriented business such as PSI 
 lies in its contacts.  The right of a departing owner to take contacts with 
 him and directly compete with his former business most certainly decreases the 
 value of the original corporate entity.
2.  Brown argues the special referee erred in assigning 
 too much weight to the testimony of James Forest Joyner, III, Phillipss expert 
 witness on the fair market value of PSI and in disregarding the testimony of 
 his own experts.  We find no error.  Joyner was an experienced certified public 
 accountant, certified financial planner, and certified valuation analyst.  
 He testified at length to the three generally accepted approaches to determining 
 the value of a corporate entity, thoroughly explaining his reasoning and methods 
 in determining the value of Browns interest in PSI.  Joyner presented 
 his opinion on the corporations net asset value, income value, and market value, 
 noting the proper weight to assign each varied with the type of business.  
 In contrast, although  each of Browns experts had varying degrees of experience 
 in the field of temporary service providers, one admitted he did not consider 
 himself exactly an expert and the other was unfamiliar with the valuation 
 approaches that Joyner discussed.  We therefore hold the special referee 
 committed no abuse of discretion in weighing the testimony of the various experts. 
 [6] 
3.  Brown next contends the special referee erred 
 in applying lack of control and marketability discounts in establishing a fair 
 value for his interest in PSI.  In support of his argument, he cites the case 
 of Morrow v. Martschink [7] 
 for the proposition that there are policy reasons against applying minority 
 and marketability discounts to the present situation.  We recognize the 
 inequities in applying these discounts to judicial dissolutions; however, we 
 hold it was proper to apply them to the present situation. 
First, although the special referee referenced 
 South Carolina Code section 33-14-310(d)(4), 
 [8] this is not a true minority shareholders or dissenters rights case.  
 Here, as it was undisputed that the parties were equal shareholders in PSI and 
 had agreed that Phillips would purchase Browns interest in PSI, the issue before 
 the special referee was solely the value of that interest.  
Second, although Morrow extends the same 
 protection against the application of unfair discounts to a situation that, 
 like this one, falls outside the traditional minority dissenter paradigm, it 
 does so on the basis that many of the same policy concerns apply to close intra-family 
 transactions, where a minority interest has been improperly squeezed out of 
 the business. [9]   Such factors simply are not 
 present here.  We therefore hold the special referee properly applied lack of 
 control and marketability discounts in valuing Browns interest in PSI. [10] 
4.  Brown further argues the special referee erred 
 in assigning no weight to market value because he considered only the value 
 of PSI as a stand-alone management services company rather than as a temporary 
 services company.  Brown further alleges error in the special referees calculation 
 of income value, arguing that Joyners analysis, on which the special referee 
 based his calculation, relied on incorrect adjustments to net income and failed 
 to account for bonuses, excessive expenses, and other nonfunctional distributions 
 paid to PSIs shareholders.  These issues are not preserved for appellate 
 review.  We did not see any ruling in the appealed order specifically addressing 
 these concerns and Brown did not raise them in a post-trial motion. 
 [11] 
5.  We reject Browns argument that the special 
 referee erred in assigning too much weight to net asset value. [12]   Although Browns experts 
 testified that physical assets were generally never used to determine the value 
 of a temporary services company, Joyner stated the income approach, even for 
 a business that had enjoyed substantial income, was unreliable if, as was the 
 case here, a principal of the company could leave at any time and take a substantial 
 portion of the customer base. [13] 
AFFIRMED.
 GOOLSBY and ANDERSON, JJ., and CURETON, 
 A.J., concur.

 
 
 [1]   The parties believed Phillips, a single mother, would be a more 
 sympathetic defendant in the event of a lawsuit.

 
 [2] Based on this arrangement, both 
 parties were later indicted for insurance fraud and spent some time in prison.

 
 
 [3]   The parties agreed Browns interest was fifty per cent of this amount 
 and Phillips would pay him for his shares. 

 
 [4]   The special referee 
 found December 31, 1995, was the critical date because 1995 was the last year 
 Brown was actively involved with PSI.  Neither party appeals this finding.

 
 
 [5]   See McDuffie v. ONeal, 324 S.C. 297, 305-06, 476 
 S.E.2d 702, 706 (Ct. App. 1996) (recognizing the negative impact of the absence 
 of a covenant not to compete on the value of a corporation and imposing such 
 a covenant rather than changing the value).

 
 [6] See 88 C.J.S. Trial 
 § 208 at 415 (1955) (In weighing evidence the law makes no distinction between 
 expert testimony and evidence of any other character, and it is for the trier 
 of the facts to determine the weight to be given to any evidence.), quoted 
 in Smith v. Smith, 294 S.C. 194, 200, 363 S.E.2d 404, 408 (Ct. 
 App. 1987). 

 
 
 [7]   922 F. Supp. 1093 (D.S.C. 1995).

 
 
 [8]   This section provides in pertinent part as follows:
 
 (d) In any action filed 
 by a shareholder to dissolve the corporation . . . the court may make such 
 order or grant such relief, other than dissolution, as in its discretion is 
 appropriate, including, without limitation, an order:
 . . . .
 (4) providing for the purchase 
 at their fair value of shares of any shareholder, either by the corporation 
 or by other shareholders.
 
 S.C. Code Ann. § 33-14-310(d)(4) 
 (1990).                

 
 
 [9]   Morrow, 922 F. Supp. at 1105 (emphasis added). 

 
 
 [10] See Belk of Spartanburg v. Thompson, 337 S.C. 109, 
 124, 522 S.E.2d 357, 365 (Ct. App. 1999) (Appraisal is not an exact science, 
 and the precise weight to be given to any factor is necessarily a matter of 
 judgment for the court in the light of circumstances in each case.) (citing 
 Santee Oil Co. v. Cox, 265 S.C. 270, 277, 217 S.E.2d. 789, 793 (1975)).   
 

 
 
 [11] See Noisette v. Ismail, 304 S.C. 56, 58, 403 S.E.2d 
 122, 124 (1991) (holding that, when the trial court does not explicitly rule 
 on a question and the appellant fails to make a motion under Rule 59(e), SCRCP, 
 to amend or alter the judgment on that ground, the issue is not properly before 
 the court of appeals and should not be addressed).

 
 
 [12] Although the special referee accepted, for the most part, the valuation 
 analysis undertaken by Joyner, he adjusted . . . the relative weights given 
 by Joyner using the income and asset approaches, assigning a weight of fifty 
 per cent to each, as opposed to Joyners decision to assign ten per cent to 
 income and ninety per cent to the assets of PSI.

 
 
 [13] See Santee Oil Co. v. Cox , 265 S.C. 270, 273, 217 
 S.E.2d. 789, 791 (1975) (noting fair value does not restrict the appraising 
 court to the use of any one method of valuation).